STATE of Wisconsin, EX REL. ROBERTA A. S., Appellant,

v.

WAUKESHA COUNTY HUMAN SERVICES DEPARTMENT and
Waukesha County Sheriff's Department, Respondents.†

Court of Appeals

*No. 92-1397. Submitted on briefs August 5, 1992.—Decided
September 23, 1992.*

(Also reported in 491 N.W.2d 114.)

†Petition to review denied.

On behalf of the appellant, a petition for writ of habeas corpus was filed by *Richard Congdon* of *Congdon, Ward & Walden, S.C.* of Waukesha.

On behalf of the respondents, a response was filed by *Marylee Wilkinson,* assistant corporation counsel, and *Cheryl A. Gemignani,* guardian ad litem.

Before Nettesheim, P.J., Brown and Anderson, JJ.

BROWN, J. This is an appeal from an order authorizing the forcible administration of psychotropic medications to Roberta S.[1] The issue is whether, under chs. 55 and 880, Stats., a guardian appointed for consenting to or refusing psychotropic medications has the power to forcibly detain the ward or to forcibly enter her premises to administer the medications. Roberta S. asserts that the trial court lacked the statutory authority to order forcible entry onto her premises for the purpose of detaining her and forcibly administering psychotropic medications. In addition, she claims that the order unconstitutionally deprives her of her liberty without due process of law.

We conclude that a guardian appointed under sec. 880.33, Stats., may not be given blanket permission to enter onto the ward's premises to detain her and forcibly administer psychotropic drugs. Such an order is contrary to the language of the statutes and violates due process. We therefore reverse the order.

On April 22, 1992, the trial court adjudged Roberta S. incompetent to refuse psychotropic medications by the procedure outlined in sec. 880.07(1m), Stats.[2] The

---

[1]This case was originally presented to the court by petition for writ of habeas corpus. By order of this court dated July 21, 1992, the petition for writ of habeas corpus was denied and was construed as a notice of appeal.

[2]Section 880.07, Stats., states in pertinent part:

(1) Any relative, public official or other person, may petition for the appointment of a guardian of a person subject to guardianship . . . ..

court found by clear and convincing evidence that:

1. Roberta [S.] has a chronic mental illness as defined in 51.01(3)(g) Wis. Stats., to wit: She's schizophrenic.

2. Roberta [S.] is not competent to refuse psychotropic medication as defined in sec. 880.01(7m) Wis. Stats. and is incapable of expressing an understanding of the pros and cons of accepting treatment and discussing the alternatives.

3. Roberta [S.] is likely to respond positively to psychotropic medications in accordance with sec. 880.07(1m) Wis. Stats.

4. Roberta [S.] is unable to provide for her care in the community in accordance with sec. 880.07(1m) Wis. Stats.

5. Unless protective services, including medication, are provided, Roberta [S.] will incur a substantial risk

. . ..

(1m)  If the petition under sub. (1) alleges that the person is not competent to refuse psychotropic medication, the petition shall allege all of the following:

(a)  That the person is likely to respond positively to psychotropic medication.

(b)  That as a result of the person's failure to take medication the person is unable to provide for his or her care in the community. The person's past history is relevant to determining his or her current inability to provide for his or her care in the community under this paragraph.

(c)  That unless protective services, including medication, are provided the person will incur a substantial risk of physical harm or deterioration or will present a substantial risk of physical harm to others.

(d)  That the person has attained the age of 18 years.

(2)  A petition for guardianship may also include an application for protective placement or protective services or both under ch. 55.

269

of physical deterioration in accordance with sec.
880.07(1m)(c).

The court's finding that Roberta S. was incompetent to
refuse medication was based in part on the report of a
court-ordered psychiatric examination.

The April 22, 1992 order also appointed Susanne G.
as guardian of Roberta S. for the purpose of consenting
to or refusing psychotropic medications pursuant to sec.
880.33(4m), Stats. In accordance with the guardianship
statutes, the court also ordered the Waukesha County
Human Services Department (the department) to
develop a plan of care and submit it to the court at the
next hearing.[3] At the hearing, the trial court expressly

---

[3]The order, dated April 22, 1992, stated:

1.  Pursuant to sec. 880.33(4m)(a) the Court finds the ward's daugh-
ter, Susanne G., to be a suitable person and appoints her as guardian
of Roberta [S.'s] person, to consent to or refuse psychotropic medica-
tion on Roberta's behalf and to serve without bond.

2.  The Waukesha County Department of Health & Human Ser-
vices, the designated 51.42 agency under sec. 880.33(4m), shall
develop or furnish and submit to this Court, a treatment plan speci-
fying the protective services, including psychotropic medication as
ordered by the treating physician, that the proposed ward should
receive. Said treatment plan shall then be reviewed by this Court.

3.  The Waukesha County Department of Health & Human Ser-
vices shall insure that Protective services and psychotropic medica-
tion are provided.

4.  Roberta [S.] shall cooperate with a treating physician and with
the Waukesha County Department of Health & Human Services
social worker and shall submit herself to an outpatient evaluation,
including appropriate testing with said psychiatrist and social
worker, within 10 days of todays [sic] date, in order that the treating
physician may advise what type of psychotropic medication the ward
should receive.

5.  The treatment plan submitted by said County Department shall
be reviewed on Monday, April 13, 1992 at 1:15 p.m.

refused to protectively place Roberta S. for the purpose of conducting a psychiatric evaluation. The court specifically found that the proceedings did not meet the requirements for protective placement because the proper petition had not been filed.

A psychiatrist evaluated Roberta S. on April 13 and submitted a written report to the department.[4] The court reviewed the report and the recommendations of the department at a hearing on May 4. Roberta S. was absent from that hearing, but counsel and a court-appointed guardian *ad litem* represented her.

After reviewing the psychiatric report, the trial court authorized the forcible administration of the approved medications to Roberta S. In addition, the court ordered the forcible detention of Roberta S. "as necessary to administer the psychotropic medication," subject to the approval of the guardian and the department. The court gave the sheriff's department permission to detain Roberta S. for long enough to give the medication. Finally, the order expressly authorized the department and Susanne G. "to enter upon [Roberta S.'s] premises without her permission. They are to knock and announce themselves as appropriate and if she ref-

---

6. Roberta [S.] shall personally appear on Monday, April 13, 1992 at 1:15 p.m.

[4]Miriam Schechter, M.D., wrote in part:

My impression at this point in time is schizophrenia, chronic by history. Because of her active and ongoing psychotic symptoms the patient would benefit from antipsychotic medication . . . . I think Mrs. [S.] would be most effectively and appropriately treated in an inpatient psychiatric hospital setting. Certainly the lowest level of intervention would be to prescribe antipsychotics as an outpatient to see how she would respond. Because of her refusal to take medication, I would anticipate that this approach would be problematic and may end up involving some physical interaction because of her resistance . . . . Side effects and target symptoms were described to the patient and her daughter.

uses to let them in, they are authorized to use force to enter and to forcibly administer these medications."[5] Roberta S. appeals.

■

The parties agree that the finding of incompetence to refuse psychotropic medications and the order for guardianship of Roberta S. were within the trial court's statutory authority. The issue with which we are concerned is whether an order for guardianship and protective services under ch. 880, Stats., may authorize the use of force to carry out the guardian's consent to psychotropic medication on behalf of the ward. To resolve the issue, we must interpret chs. 51, 55 and 880, Stats. The interpretation of statutes is a question of law which we review *de novo* without deference to the trial court. *In re K.N.K.,* 139 Wis. 2d 190, 199, 407 N.W.2d 281, 286 (Ct. App. 1987).

The provision under which the trial court appointed Susanne G. as Roberta S.'s guardian states:

(a)  If the court finds by clear and convincing evidence that the person is not competent to refuse psychotropic medication and the allegations under s. 880.07(1m) are proven, the court shall appoint a guardian *to consent to or refuse psychotropic medication on behalf of the person* as provided in the court order under par. (b).

---

[5]The trial court issued a subsequent order on August 7, which requires Roberta S. to appear at a designated place once per week to receive medications. If she does not appear, the sheriff's department is to detain her and take her to the agreed location. The trial court did not state whether this order supersedes the previous order that is the subject of this appeal. We cannot determine which, if any, parts of the previous order have been modified or extinguished, and we therefore assume that the previous order remains in full force.

(b)   In any case where the court finds that the person is not competent to refuse psychotropic medication under s. 880.07(1m) and appoints a guardian *to consent to or refuse psychotropic medication on behalf of the person,* the court shall do all of the following:

1.   Order the appropriate county department under s. 46.23, 51.42 or 51.437 to develop or furnish, and to submit to the court a treatment plan specifying the protective services, including psychotropic medication as ordered by the treating physician, that the proposed ward should receive.

2.   Review the plan submitted by the county department under subd. 1, and approve, disapprove or modify the plan.

3.   Order protective services under ch. 55.

4.   Order the appropriate county department under s. 46.23, 51.42 or 51.437 to ensure that protective services, including psychotropic medication, are provided under ch. 55, in accordance with the approved treatment plan.

Section 880.33(4m), Stats. (emphasis added). The parties offer contrasting interpretations of this section.

Roberta S. bases her interpretation of sec. 880.33(4m), Stats., on the language of the statute. She asserts that force is not specifically authorized by the plain language of the guardianship statutes, and therefore may not be ordered by the court. Roberta S. correctly points out that the only mention of force in a protective services or guardianship situation is contained in the emergency provisions, sec. 55.05(4), Stats. She argues that this is not an emergency situation, so sec. 55.05(4) does not apply in her case.

Finally, Roberta S. argues that the trial court's order deprives her of due process of law because she has not had a meaningful opportunity to be heard. Again,

she refers to the findings required by sec. 55.05(4), Stats. Roberta S. asserts that the proceedings under sec. 880.33(4m), Stats., do not contemplate the use of force in emergencies that might arise in the future. Therefore, she did not have an opportunity to be heard on the use of force issue.

In contrast, the county and the department argue that proceedings under sec. 880.33(4m), Stats., encompass all of the findings necessary to authorize the use of force to administer psychotropic medications. The county equates a guardianship proceeding under sec. 880.33(4m) with a protective placement proceeding under sec. 55.05(4), Stats. They argue that, absent the element of emergency, the key findings in secs. 55.05(4) and 880.33(4m) proceedings are the same: both sections require a finding of dangerousness. Because the requisite finding of dangerousness was made in this sec. 880.33(4m) proceeding, another hearing under sec. 55.05(4) to make the same finding would be superfluous and contrary to common sense. The county and the department assert that Roberta S.'s guardianship hearing fulfilled due process because it gave her a meaningful opportunity to be heard on the question of dangerousness. Therefore, the trial court acted within its statutory authority and did not violate due process by authorizing the use of force.

We disagree with the county and the department. We do not agree that a guardianship appointment under sec. 880.33(4m), Stats., includes the authority to force medication on a ward who refuses to take it. The purpose behind ch. 55, Stats., is to "allow the individual the same rights as other citizens, and at the same time protect the individual from exploitation, abuse and degrading treatment." Section 55.001, Stats.

274

■ We must interpret all provisions in ch. 55 with this stated purpose in mind. Because sec. 880.33(4m), Stats., requires that protective services be ordered when incompetency is determined, we conclude that the purpose behind ch. 55 must also be considered when interpreting the scope and definition of a guardianship for the purpose of consenting to or refusing psychotropic medication under sec. 880.33(4m).

Our reading of the statutes leads us to the conclusion that a guardianship for the purpose of consenting to or refusing psychotropic medication is to be used primarily for the protection of the ward. A guardian, therefore, is appointed to ensure that a ward is not unnecessarily or improperly medicated. The guardian's exercise of consent simply means that he or she makes an informed decision about the propriety of the treatment when the ward is unable to do so. It does not necessarily follow that medications can nonetheless be forcibly administered if the ward refuses.

■ Were we to allow the forcible administration of psychotropic medications in a guardianship and protective services situation, we would be exceeding the statute's protective goal. Instead of using sec. 880.33(4m), Stats., guardianships as protective shields, we would be using them as weapons with which to force medication on unwilling individuals. This is exactly the type of paternalistic intervention that the legislature and the courts have sought to minimize in their dealings with mentally ill individuals. *Cf.* Commission on the Mentally Disabled and Commission on Legal Problems of the Elderly, American Bar Ass'n, *Guardianship An Agenda for Reform: Recommendations of the National Guardianship Symposium and Policy of the American Bar Associ-*

*ation* 15-16 (1989) (individuals should have the freedom to choose "a risk-associated lifestyle"); S. Brakel, J. Parry & B. Weiner, *The Mentally Disabled and the Law* 378-79 (3d ed. 1985) (view that mental illness should include concepts designed to examine individual needs and rights).

The only situation in which forcible administration of medication can be said to protect an individual is if that individual is dangerous without the medication. In fact, the only explicit references to involuntary medication with psychotropic drugs are contained in ch. 51, Stats. In each case, a finding of a recent act or omission indicating dangerousness to the individual or to others is required before an individual may be forced to take psychotropic drugs.[6] That finding of dangerousness is different from, and more rigorous than, the dangerousness required by sec. 880.33, Stats.

If the court finds probable cause to believe that an individual is a proper subject for commitment under sec. 51.20(1) or (1m), Stats., the legislature specifically authorizes the forcible administration of medication in several situations. First, before the final commitment hearing the court may find probable cause to believe that an individual is incompetent to refuse medication and may then authorize administration of medication regardless of the individual's consent. Section

---

[6]To commit an individual under sec. 51.20(1m), Stats., the court must find: (1) that the individual is mentally ill, drug dependent, or developmentally disabled and is a proper subject for treatment; and (2) that the individual "evidences such impaired judgment, *manifested by evidence of a recent act or omission,* that there is a substantial probability of physical impairment or injury to himself or herself." (Emphasis added.) Section 51.20(1)(a) also lists several grounds for commitment, all of which require evidence of a recent act or omission.

51.61(1)(g)2, Stats. Second, after the final commitment hearing, an individual who is incompetent to refuse medication may be forced to take psychotropic drugs. Section 51.61(1)(g)3. Finally, and most importantly, sec. 51.20(13)(dm), states:

> If the court finds that the dangerousness of the subject individual is likely to be controlled with appropriate medication administered on an outpatient basis, the court may direct in its order of commitment that the county department . . . may, after a facility evaluates the subject individual and develops an appropriate treatment plan, release the individual on a conditional transfer . . . with one of the conditions being that the individual shall take medication as prescribed by a physician, subject to the individual's right to refuse medication under s. 51.61(1)(g) and (h), and that the individual shall report to a particular treatment facility on an outpatient basis for evaluation as often as required by the director of the facility or the director's designee. The court order may direct that, if the director or his or her designee determines that the individual has failed to take the medication as prescribed or has failed to report for evaluation as directed, the director or designee may request that the individual be taken into custody by a law enforcement agency . . . and that medication, as prescribed by the physician, may be administered voluntarily or against the will of the individual under s. 51.61(1)(g) and (h).

█

The trial court's order here appears to be patterned after sec. 51.20(13)(dm), Stats. Unfortunately, the trial court issued the order in the context of proceedings under chs. 55 and 880, Stats. We hold that such an order for forcible administration of psychotropic medication may only be issued in a ch. 51, Stats., proceeding after a

finding has been made of dangerousness because of recent acts or omissions. This conclusion is consistent with the protective purpose embodied in the mental health act and the protective services statute. Therefore, we hold that administration of medication against the will of an individual may only be ordered through a ch. 51 proceeding, even if that individual is incompetent to refuse medication.

Our interpretation of the guardianship and protective services statutes is consistent with public policy. "The unauthorized use of psychotropic drugs to treat mental illness not only infringes upon the right to bodily autonomy, but may also cause actual harm due to adverse side effects." *State ex rel. Jones v. Gerhardstein,* 135 Wis. 2d 161, 175, 400 N.W.2d 1, 6 (Ct. App. 1986). The side effects may include anything from serious neurological disorders to increased risk of heart attack. *See id.* at 175 n.3, 400 N.W.2d at 6–7. Were we to authorize forcible administration of medication in the absence of the ward's need for protection, we would be allowing severe infringements on individual rights without justification. This we decline to do.

We recognize that, in this case, a new ch. 51, Stats., proceeding will require some duplicative findings. However, we observe that duplication may be avoided in the future by filing a sec. 51.20, Stats., petition concurrently with the petition for guardianship, if the attorneys involved foresee a need for forcible administration of medication. This is no different from the requirement that a separate petition for protective placement must be filed if a prospective guardian desires to protectively place a potential ward. *See* secs. 880.33(7) and 55.06, Stats. We determine that a separate petition for involuntary commitment is the only route by which a ward's

rights can be protected when forced medication is involved.

For the above reasons, we hold that the trial court's order exceeded statutory authority and offended due process. We therefore reverse the order and remand to the trial court for further proceedings consistent with this opinion.

*By the Court.*—Order reversed and cause remanded with directions.