**Robert Ray ENIS, Plaintiff,**

v.

**DEPARTMENT OF HEALTH AND SOCIAL SERVICES OF THE STATE OF WISCONSIN; Jo Leean, Secretary of the Department of Health and Social Services; Tom Alt, Interim Administrator of the Division of Care and Treatment Facilities; Steve Watters, Director of Mendota Mental Health Institute; Gary J. Maier; and Arun Parikh, Defendants.**

No. 95–C–0727–C.

United States District Court,
W.D. Wisconsin.

Nov. 15, 1996.

Jason Klimowicz, Legal Advocates, Madison, for Plaintiff.

Richard Perkins, Assistant Attorney General, Madison, for Defendants.

## OPINION AND ORDER

CRABB, District Judge.

In this civil action for injunctive, declaratory and monetary relief brought pursuant to 42 U.S.C. § 1983, plaintiff Robert Ray Enis challenges the constitutionality of Wisconsin's statutory scheme governing the forced administration of psychotropic drugs to persons who have been found not guilty by reason of insanity under the state's criminal laws and who have been determined to be incompetent to refuse medication. Plaintiff focuses on Wis. Stat. § 971.17(3)(c), which permits the state, "under appropriate medical standards," to medicate persons committed after acquittal of criminal conduct by reason of mental illness if it can prove to the committing court that the persons are not competent to refuse medication for their mental condition. Plaintiff contends that the statute violates his due process rights because it fails to protect him from the forced administration of psychotropic drugs in the absence of determinations that 1) he is dangerous to himself or others and 2) there is no less intrusive alternative to forced drug treatment. Plaintiff contends that the same statute violates his equal protection rights because it treats him and other incompetent persons found not guilty by reason of insanity differently from persons committed civilly, who are provided certain protections under Wis. Stat. § 55.06 before psychotropic drugs can be administered to them, including the appointment of guardians and annual reviews of both their commitment and their continued need for drugs. Jurisdiction is present. 28 U.S.C. §§ 1331, 1343.

 The case is before the court on plaintiffs motion for summary judgment on his claim for injunctive and declaratory relief. I conclude that plaintiff has a liberty interest in avoiding the forced administration of psychotropic drugs without a preceding determination that he is dangerous to himself or others and that administration of drugs is in his best medical interest. Accordingly, I conclude that Wis. Stat. § 971.17 is unconstitutional to the extent it does not require a court to determine before authorizing medication that an incompetent inmate is dangerous and that treatment with psychotropic drugs is in his medical interest, given the legitimate needs of his institutional confinement. I conclude also that plaintiffs procedural rights require periodic review of the medication decision but do not extend to the provision of a guardian at the hearing held to decide whether he can be medicated forcibly. Finally, I conclude that the equal protection clause does not give plaintiff a right to the appointment of a guardian.

For the purpose of deciding the motion for summary judgment, I find from the findings proposed by the parties that the following material facts are not in dispute.

## UNDISPUTED FACTS

Plaintiff is a resident of the Mendota Mental Health Institute. Defendants are administrators or employees of the Wisconsin Department of Health and Social Services or the Mendota Mental Health Institute. Defendant Jo [Joseph] Leean is Secretary of the Wisconsin Department of Health and Social Services; defendant Tom Alt is the interim administrator of the department's Division of Care and Treatment Facilities; defendant Steve Watters is the director of the Mendota Mental Health Institute; defendant Gary Maier is a staff psychiatrist at Mendota; and defendant Arun Parikh is a staff psychologist there. Both Maier and Parikh have overseen the forced medication of plaintiff.

Plaintiff was committed to the Wisconsin Department of Health and Social Services on January 14, 1974, pursuant to Wis. Stat. § 971.17(1), for treatment and care of his psychiatric condition after he had been found not guilty of murder by reason of insanity. Plaintiff was diagnosed as schizophrenic.

On December 5, 1994, defendant Maier petitioned the Circuit Court for Milwaukee County for an order permitting him to forcibly administer psychotropic (antipsychotic) medication to plaintiff. On December 16, 1994, the Honorable Jeffrey Kremers authorized the forcible administration of medication pursuant to Wis. Stat. §§ 971.17(3)(c) and 971.16(3), after finding that plaintiff was not competent to refuse medication or treatment. Judge Kremers made no finding regarding the danger plaintiff posed to himself or others within the Mendota Mental Health Institute if the medication was not administered or about the existence of less intrusive alternative treatments.

On or about December 20, 1994, defendant Maier began administering the psychotropic drug Serentil to plaintiff against his will. On or about February 2, 1995, defendant Maier switched plaintiff from Serentil to another psychotropic drug, Chlorpromazine, which plaintiff continues to receive to the present date. In November 1995, defendant Parikh increased the amount of Chlorpromazine administered to plaintiff. No court has reviewed Judge Kremers's December 16, 1994 order to medicate plaintiff involuntarily or defendant Parikh's decision to increase plaintiff's dosage. Defendants will continue to administer psychotropic drugs to plaintiff under the authority of Judge Kremers's 1994 order to the extent that they deem such treatment to be in his medical interest. Plaintiff has not been appointed a guardian who can either consent to the administration of psychotropic medication or refuse it on plaintiff's behalf.

Psychotropic drugs such as Serentil and Chlorpromazine alter the chemical balance in a person's brain, changing the cognitive process. These drugs can have serious and even fatal side effects, including tardive dyskinesia and neuroleptic malignant syndrome. The Mendota Mental Health Institute has facilities and staff capable of controlling the behavior of patients to protect society, other patients and staff. A person may be dangerous outside Mendota, but not dangerous inside the institution because of the controls present. Within Mendota, persons acquitted by reasons of insanity live together with persons civilly committed under Wis. Stat. § 55.06 for protective placement.

## OPINION

### A. *Background*

To understand plaintiff's claims and the context in which they arise, it is helpful to have some idea of the Wisconsin statutory scheme relating to the commitment and treatment of mentally ill persons. There are at least three different routes by which individuals with mental illness can be committed to the custody of the Wisconsin Department of Health and Social Services. They may be committed civilly to the department for care and treatment, pursuant to Wis. Stat. § 51.20, if the court finds that they are 1) mentally ill, drug dependent or developmentally disabled; 2) proper subjects for treatment; and 3) dangerous to themselves or others. (This same statute covers the com-

mitment of mentally ill prison inmates. § 51.20(1)(ar)2.

Under the second route, Wis. Stat. § 55.06, persons can be placed with the Department of Health and Social Services for care and custody on a judicial finding that they are incompetent (or, if a minor, developmentally disabled) and "so totally incapable of providing for [their] own care or custody as to create a substantial risk of serious harm to [themselves] or others," because of chronic mental illness, developmental disabilities, the infirmities of aging and the like. § 55.06(2)(c). The third route, Wis. Stat. § 971.17, governs the commitment of persons like plaintiff, who have been acquitted of criminal conduct by reason of insanity. Under current law, these individuals are committed to the department if, at a hearing held shortly after entry of a judgment of not guilty by reason of insanity, the court finds by clear and convincing evidence that conditional release would pose a significant risk either of bodily harm to the acquitted person or others or of serious property damage. Wis. Stat. §§ 971.17, 51.37(3). At the same hearing, the court can consider whether the person to be committed is not competent to refuse medication or treatment for his or her mental condition, *id.*, that is, whether the person does not have the ability to express an understanding of the advantages and disadvantages of accepting medication or treatment and the alternatives to accepting the particular medication or treatment offered after having an explanation of the advantages, disadvantages and alternatives. Wis. Stat. § 971.16. (Before the statute was amended in 1990, commitment to the department was mandatory upon a judgment of not guilty by reason of insanity and the statute made no reference to consideration of medication or treatment with respect to persons who were not competent to refuse either one.) If the state proves incompetency by clear and convincing evidence, the court issues an order to that effect and directs that "whoever administers the medication or treatment to the person shall observe appropriate medical standards." Wis. Stat. § 971.17(3)(c). If the court does not make such a finding and the institution later comes to believe that a committed person is incom-

petent, it may move for a hearing to determine competency, supported by the report of a licensed physician asserting that the person is in need of medication or treatment and is not competent to refuse it. Such a motion requires a prompt evidentiary hearing at which the state has an opportunity to prove incompetency by clear and convincing evidence. As is the case at the pre-commitment hearing, if the state succeeds, the court must issue an order that the person is not competent to refuse medication or treatment and that "whoever administers the medication or treatment to the person shall observe appropriate medical standards." Wis. Stat. § 971.17(3)(c).

Persons committed to the custody of the Wisconsin Department of Health and Social Services under § 55.06 have the right to refuse to take psychotropic medication against their will. *State ex rel. Roberta S. v. Waukesha County Human Services Department,* 171 Wis.2d 266, 274–78, 491 N.W.2d 114, 117–19 (1992). Pursuant to Wis. Stat. § 55.06, individuals cannot be committed for protective placement or found incompetent to refuse medication unless a guardian has been appointed for them under Wis. Stat. § 880.33(4m)(a). The county department responsible for ensuring that appropriate protective services are provided to an individual must review the need for such a guardianship annually. § 880.34(6)(a)(2)(c). Persons committed under § 51.20 or § 971.17 can refuse psychotropic medication except in specific circumstances: 1) when ordered by the court following a hearing to determine probable cause for commitment but before final commitment and on a finding that the person is not competent to refuse medication, the medication will have therapeutic value and it will not "unreasonably impair the ability of the individual to prepare for or participate in subsequent legal proceedings," Wis. Stat. § 51.61(3)(g)(2); 2) when the medication or treatment is necessary to prevent serious physical harm to the patient or to others, § 51.61(g)(3); or 3) when the person has been adjudicated incompetent to refuse medication or treatment, § 51.61(3)(g)(3).

Commitments pursuant to Wis. Stat. § 51.20 expire after one year (except for the

first commitment order, which expires after six months), § 51.20(13)(g). By implication, the need for the involuntary administration of psychotropic medication expires with the expiration of the commitment order. Commitments pursuant to § 55.06 must be reviewed annually. Section 971.17 contains no provision for automatic review of this determination; it provides only that any person committed for institutional care under this section may petition for conditional release six months after the entry of the initial commitment order or denial of his or her most recent release petition.

### B. *Nature of Interest at Stake*

Under the due process clause of the Fourteenth Amendment, all individuals possess a significant liberty interest in avoiding the administration of psychotropic drugs. *Washington v. Harper,* 494 U.S. 210, 221, 110 S.Ct. 1028, 1036, 108 L.Ed.2d 178 (1990). Although such drugs can have powerful therapeutic value, they can also have serious side effects, among them tardive dyskinesia (a neurological disorder characterized by involuntary, uncontrollable movements of various muscles), acute dystonia (severe involuntary spasm of the upper body or face) and akathesia (restlessness). *Id.* at 229–30, 110 S.Ct. at 1040–41. To force them upon a nonconsenting individual "represents a substantial interference with that person's liberty," *id.,* that is justifiable only if the individual's liberty interest is outweighed by a state interest of sufficient importance. Defining the scope of the liberty interest as it is constrained by competing state interests is the first step in analyzing what the due process clause requires. *Id.* at 220, 110 S.Ct. at 1035–36. This determination establishes the individual's substantive right and precedes the procedural inquiry, which is to identify " 'the minimum procedures required by the Constitution for determining that an individual's liberty interest actually is outweighed in a particular instance.' " *Id.* (citing *Mills v. Rogers,* 457 U.S. 291, 299, 102 S.Ct. 2442, 2448, 73 L.Ed.2d 16 (1982)).

At issue in *Harper* was the constitutionality of a state of Washington scheme under which nonconsenting mentally ill prisoners alleged to be in need of psychotropic drugs were provided 1) a hearing before a committee composed of a psychiatrist, psychologist and the institution's associate superintendent, none of whom could be involved at the time in the treatment or diagnosis of the inmate; 2) an appeal from the hearing decision to the superintendent; and 3) an opportunity for judicial review of the final decision in a state court. *Id.* at 231–36, 110 S.Ct. at 1042–45. Under the Washington statutes, inmates had the procedural rights to at least 24 hours' notice of the intent to convene an involuntary medication hearing, during which time they could not be medicated; to attend the hearing; to present evidence; to call witnesses; to cross-examine staff witnesses; and to have the assistance of a lay advocate. In addition, they were entitled to periodic review of any decision to administer medication forcibly.

The Supreme Court began its analysis of the case by defining Harper's substantive right, finding that Harper had the right to refuse medication but that his right was limited by two considerations: his medical interests and the legitimate needs of his institutional confinement (which includes an evaluation of his dangerousness within the institution). *Harper,* 494 U.S. at 222, 110 S.Ct. at 1036–37. He could be forced to take medication only on findings that he had a mental disorder that was likely to cause harm to himself or others if not treated and that medication would be medically beneficial to him. According to the Court, such a standard recognized both Harper's medical interests and the state's legitimate interests, which are analyzed under three of the guidelines set out in *Turner v. Safley,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), for evaluating prison regulations impinging on constitutional rights: 1) there must be a valid, rational connection between the prison regulation and the asserted legitimate governmental interest; 2) the court must consider the impact on guards and other inmates and the allocation of prison resources of the accommodation of the constitutional right at issue; and 3) there must be an absence of ready alternatives (otherwise the reasonableness of the regulations will be questionable). *Harper,* 494 U.S. at 224–25, 110 S.Ct. at 1038–39.

Having delineated Harper's substantive right, the Court turned to the process in place. It found the state of Washington's procedures sufficient to ensure that the medication decision was accurate and justified. The Court rejected Harper's claim that it was necessary to have a judicial decision maker. Inmates' due process concerns were met by the provision of an independent medical decision maker and by the state's provisions for notice, the right of the inmate to be present at an adversary hearing and the right to present and cross-examine witnesses. *Harper,* 494 U.S. at 235, 110 S.Ct. at 1043–44.

*Harper* makes it clear that states must establish dangerousness before they can administer drugs to a nonconsenting mentally ill prisoner who is competent to refuse medication but it does not address persons in plaintiffs situation who have been acquitted of criminal behavior by reason of mental illness and are incompetent to refuse medication. This leaves the question whether the holding in *Harper* should be extended to persons in such a situation. Defendants do not argue that this would be an unwarranted extension. They cannot argue that persons .acquitted of crimes are entitled to any less protection than convicted persons, *see Riggins v. Nevada,* 504 U.S. 127, 135, 112 S.Ct. 1810, 1815, 118 L.Ed.2d 479 (1992) (Fourteenth Amendment provides at least as much protection to persons detained for trial as to convicted prisoners), and they do not contend that plaintiffs incompetency to refuse medication relieves the state of the obligation to prove that without medication he will pose a risk of harm to himself or others.

Defendants concede plaintiffs significant interest in avoiding the arbitrary administration of psychotropic drugs, but assert that this interest has been protected. First, they argue, plaintiff was found dangerous by implication when he was determined to have committed a crime. Second, plaintiff does not dispute that the state proved to Judge Kremers that medication was in plaintiffs medical interest. Third, there is no need to prove the absence of less intrusive alternatives because the state supreme court has ruled that such a showing is not required

before acquitted mentally ill persons may be confined, *State v. Randall,* 192 Wis.2d 800, 835, 532 N.W.2d 94, 108 (1995), and neither the Court of Appeals for the Seventh Circuit nor the United States Supreme Court has held that the state must give consideration to this factor when determining the need for forced medication, except in connection with an inmate's criminal trial. *Riggins,* 504 U.S. 127, 112 S.Ct. 1810 (state violated due process when it administered psychotropic drugs to pretrial detainee during trial without establishing that drugs were medically appropriate and essential for detainee's safety or safety of others, taking into consideration less intrusive measures). *Cf. Sullivan v. Flannigan,* 8 F.3d 591, 599 (7th Cir.1993) (denying inmate's claim that state violated *Riggins* when it forced him to remain on drugs while defending himself at hearing to consider his continued need for medication but stating in dictum that it might be desirable for state to consider less intrusive alternatives to forced medication of inmate who is to appear at such a hearing).

1. *Dangerousness*

■ As far as the record reveals, the only finding bearing directly or indirectly on plaintiff's dangerousness was the finding in January 1974 that he had committed the murder with which he was charged. Defendants do not suggest that they have ever proved to any court or reviewing body that plaintiff poses a danger to himself or others within the institution if he is not given psychotropic medication; they argue that it is not necessary to do so because the finding of dangerousness made at the time of defendant's commitment implies a finding that he is in need of medication. In defendants' view, once an individual has been found not guilty by reason of insanity, the state may presume his dangerousness for the purpose of administering medication. Not surprisingly, plaintiff takes a different view. He argues that a finding of dangerousness for the purpose of commitment cannot do double duty as a finding of dangerousness within an institution, given the numerous means institutions have for dealing with different kinds of inmates. As plaintiff argues, many of the concerns that arise when an inmate is consid-

ered for release to the community simply are not present within an institutional setting. *Cf. Felce v. Fiedler*, 974 F.2d 1484, 1494 (7th Cir.1992) (noting state's argument that it has greater interest in using psychotropic drugs on parolees than on prisoners because with incarcerated persons, it can use walls, guards and other measures not available to protect society from violent behavior of a parolee). *See also United States v. Charters*, 863 F.2d 302, 304–05 (4th Cir.1988) (en banc) (in request to court to approve forcible administration of psychotropic medication, psychiatrist noted that medication could improve detainee's mental state to point that would permit his return to community; in untreated condition, detainee would require indefinite confinement in institutional setting).

■ In support of the argument that the two findings (dangerousness sufficient to warrant commitment and dangerousness sufficient to warrant forcible medication) are not identical, plaintiff cites *Cochran v. Dysart*, 965 F.2d 649 (8th Cir.1992), a case involving the constitutional adequacy of a hearing provided a federal prisoner to determine whether he should be given psychotropic medication against his wishes. Unpersuaded by the dissent's argument that the fact of the prisoner's commitment under 18 U.S.C. § 4246 was sufficient to establish dangerousness for the purpose of administering psychotropic medication, the majority of the court found the hearing inadequate because the record contained no medical reports to support the opinion of the treating psychiatrist that the prisoner was dangerous to himself and others without medication. This result is consonant with *Harper*. The state must establish that its interest in maintaining the order and safety of its institutions requires treating plaintiff with psychotropic medication. Such a showing cannot rest solely on the basis of a finding made 22 years ago that plaintiff committed a serious crime. The state must adduce evidence to support its contentions that plaintiff is dangerous at the time that treatment is requested *and* that he is dangerous within the setting of the institution. *See Harper*, 494 U.S. at 232, 110 S.Ct. at 1042 (approving Washington policy under which decision maker is asked to review medical treatment decision that inmate

*suffers* from, mental disorder and that as a result of that disorder, he *is* dangerous to himself, others, or their property) (emphasis added). The use of the present tense is appropriate. Only present dangerousness and present need for medication justify the significant intrusion represented by the forced administration of psychotropic medication.

Defendants argue that such a holding would create different due process standards of dangerousness, one for commitment and one for forced medication purposes, a prospect rejected by the Western District of Virginia in *Washington v. Silber*, 805 F.Supp. 379, 383 n. 3 (W.D.Va.1992). Defendants are wrong. The state need not apply two standards for determining dangerousness. It need only apply its single definition of dangerousness, that is, whether plaintiff is likely to cause harm to himself or others, but it must do so at the time the forced medication is ordered and it must take into consideration the particular circumstances of his confinement.

In citing *Silber*, defendants give short shrift to the significant differences between that case and plaintiffs situation. *Silber* concerned a commitment proceeding for a prisoner who had been convicted and incarcerated, rather than an individual acquitted of criminal conduct by reason of mental illness. The prisoner's commitment proceeding took place less than six months before the administration of medication, not 22 years earlier. Furthermore, the state judge made a determination that in the district court's view was equivalent to a finding of dangerousness sufficient to justify both commitment and involuntary medication. In plaintiffs case, there has never been a finding of dangerousness made for the purpose of either commitment or medication but instead, a mandatory commitment subsequent to a finding of acquittal by reason of mental illness. The Supreme Court has held that a mandatory commitment under such circumstances is constitutionally valid: the defendant has been found beyond a reasonable doubt to have committed a criminal act, indicating dangerousness; he has been found to suffer from a mental illness sufficient to lead him to commit the

act; and he has a right to a review of the commitment after fifty days that ensures the currency of the findings, *Jones v. United States,* 463 U.S. 354, 364, 366, 103 S.Ct. 3043, 3049–50, 3050–51, 77 L.Ed.2d 694 (1983), but the Court has never held that a mandatory commitment justifies the forcible administration of medication in the absence of any additional hearing. Plaintiffs own situation demonstrates the lack of congruence between the findings. It appears from the undisputed facts that he was in the department's custody for 20 years before the institution petitioned for authority to administer psychotropic drugs to him.

### 2. *Plaintiffs medical interests*

Plaintiff does not contend that when defendant Maier petitioned to the circuit court for authority to medicate plaintiff, he did not have plaintiffs medical interests in mind. The medical benefits to plaintiff of medication are not an issue in this case.

### 3. *Less intrusive alternatives*

▪ In arguing that the substantive right to avoid the arbitrary administration of psychotropic medication extends to requiring the state to prove the absence of less intrusive alternatives to medication, plaintiff relies on *Riggins,* 504 U.S. 127, 112 S.Ct. 1810. The issue in *Riggins* was the state's right to forcibly medicate a pretrial detainee so that he would be competent to stand trial. The Supreme Court held that the state's interest in attempting to restore the competence of incompetent defendants did not outweigh Riggins's right to avoid the forcible administration of psychotropic drugs in the absence of findings that such treatment was medically appropriate and, "considering less intrusive alternatives, essential for the sake of Riggins's own safety or the safety of others." *Id.* at 135, 112 S.Ct. at 1815. It is noteworthy that the Court cited *Harper,* 494 U.S. at 225–26, 110 S.Ct. at 1038–39, for this proposition. In *Harper,* the Court discussed the kind of showing the institution must make in proving the legitimacy of its institutional needs. Among the guidelines was the showing that less intrusive alternatives were not readily available. Although the institution

does not " 'have to set up and shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint,' " *id.* at 225, 110 S.Ct. at 1038 (quoting *Turner v. Safley,* 482 U.S. at 90–91, 107 S.Ct. at 2262), its ability to show that no alternatives are readily available "is evidence of the reasonableness of a prison regulation" *id.,* and evidence that it is not an exaggerated response to prison concerns.

It does not follow necessarily that, as plaintiff seems to argue, Mendota Mental Health Institute must employ ambulatory restraints or other forcible means of controlling plaintiffs behavior before it will be given authority to administer psychotropic medication. Whether alternatives are "readily available" is a factual question, the answer to which will depend in part on how effective alternative restraints would be and what risks, if any, their use poses to the staff. *See, e.g., Harper,* 494 U.S. at 226–27, 110 S.Ct. at 1039–40 (prisoner failed to show that physical restraints or seclusion were acceptable substitutes for psychotropic drugs in terms of their medical effectiveness or toll on limited prison resources).

### C. *Significance of Plaintiffs Incompetency*

▪ Unlike the prisoner-plaintiff in *Harper,* plaintiff has been found incompetent to make decisions regarding his medication. Defendants do not argue that this distinction affects the scope or nature of plaintiffs substantive right to be free from the arbitrary administration of psychotropic medication. Plaintiff remains free to avoid the forcible administration of medication absent a finding by an independent decision maker that such medication is justified by the risk of harm plaintiff poses to himself or others and by his medical interests, given the legitimate needs of his institutional confinement.

Wis. Stat. § 971.17(3)(c) seems to have been enacted in response to the Supreme Court's decision in *Youngberg v. Romeo,* 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982), a case involving the rights of developmentally disabled persons to safe conditions, freedom from physical restraints and training in Pennsylvania's institutions. In delineating Nicholas Romeo's right to freedom from physical restraint, the Court recognized

his liberty interest in remaining free from bodily restraint but held that this interest was outweighed by the state's legitimate interests in protecting inmates from harm to themselves or others, provided that professional judgment is exercised before the restraints are employed. *Id.* at 321–23, 102 S.Ct. at 2461–62. The decisions of professionals are presumptively valid: "liability may be imposed only when the decision by a professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment." *Id.* at 323, 102 S.Ct. at 2462.

Before *Harper* was decided in 1990, several courts had held that forcible administration of medication could be justified by the professional judgment of treating physicians. *See, e.g., Charters,* 863 F.2d at 313 (state could medicate incompetent pretrial detainee over his objections if decision is made by appropriate professional in exercise of professional judgment); *Project Release v. Prevost,* 722 F.2d 960, 981 (2d Cir.1983) (decision to medicate civilly committed inmates must be made on basis of "professional judgment" and be subject to non-judicial hearing and review).

Although *Harper* does not address the rights of persons incompetent to refuse medication, the Court's characterization of the potential effects of psychotropic medication indicates its strong concern about the administration of such medication in the absence of a dear showing that it is necessitated by the risk of harm the inmate poses and the medical need for medication to reduce the danger. There is no reason to think that if the Court were to take up the issue of administering psychotropic medication to persons incompetent to refuse medication, it would not impose the *Harper* standard, rather than the "appropriate professional judgment" standard it found adequate in *Youngberg,* where the issue was the use of physical restraints. The potential side effects of psychotropic medication warrant giving its administration closer scrutiny than the use of physical restraints.

### D. *Procedural Guarantees*

*Harper* does not require that medication decisions be made by courts. In fact, the Court emphasized in that case the advantages of having the decision made by medically trained personnel who are able to review the administration of psychotropic drugs on a regular basis and to assess the risks, utilizing the frequent and ongoing clinical observations of the medical staff. The critical criterion is the independence of the decision maker. This factor is satisfied if none of the persons who decide whether to permit involuntary medication are involved in the inmate's current treatment or diagnosis. Of course, additional procedural protections must be provided, whoever the decision maker is. These include notice, the opportunity to be heard, the provision of a lay advocate or lawyer, the opportunity to call witnesses of one's own and to cross-examine the state's witnesses and the right to appeal the medication decision. It is within the state's discretion whether to continue its practice of having the committing court make the determination whether the state can medicate an incompetent inmate. Although a judicial decision maker is not required, it certainly complies with due process to provide one.

Plaintiff does not attack the present statutory procedure in terms of the protections it provides for persons undergoing hearings, with two exceptions. He maintains that regular review is required, as well as the appointment of a guardian. He raises these two issues under the equal protection clause, but they have due process implications as well.

■ In my view, due process requires regular review of the medication decision. In *Harper,* the Court approved the state's policy requiring that the administration of psychotropic drugs be reviewed by the independent medical committee after the first seven days of treatment. Thereafter, the treating psychiatrist had to review the case and prepare a report for the medical director of the Department of Corrections every 14 days while treatment continued. *Harper,* 494 U.S. at 216, 110 S.Ct. at 1033–34. In this case, the record contains nothing to indicate that there is a procedure in place to review the deci-

sions to continue to medicate plaintiff and to increase the amount of the medication. Without regular review of these decisions, there is no guarantee that the medication decision has any currency, without which it is questionable whether the inmate's liberty interest actually is outweighed in the particular instance.

Procedural protections are to be congruent with the rights and interest at stake in the particular case, *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972), *Felce*, 974 F.2d at 1496 (citing *Harper*, 494 U.S. at 229, 110 S.Ct. at 1040–41), and with the nature of the inquiry. In determining the nature and extent of procedures to be required, courts are to consider the private interest affected by the official action, the risk of an erroneous deprivation of this interest through the procedures used, the probable value of additional procedural safeguards and the government's interest, including the fiscal and administrative burdens of additional protections. *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).

■ In plaintiffs case, the private interest in avoiding the arbitrary administration of medication is significant, but plaintiff has not shown how the appointment of a guardian would advance the inquiry or decrease the risk of an erroneous decision. Under the present procedures, he is entitled to counsel; the Washington procedures at issue in *Harper*, 494 U.S. at 216, 110 S.Ct. at 1033–34, guaranteed assistance by a lay adviser who understands the psychiatric issues involved. As a general rule, a guardian is used when it is important to determine the wishes of the ward. In plaintiffs situation, his wishes are essentially irrelevant. The questions the decision maker must answer are whether an incompetent inmate poses a risk of harm and whether medication is in his medical interest, not what the inmate wants in the way of treatment. If the decision maker determines that the inmate does pose a risk of harm without medication and that medication would be in his medical interest, that is the end of the inquiry. Plaintiffs substantive right does not allow him to refuse medication once the necessary findings have been made by an independent decision maker.

### E. *Equal Protection*

■ Plaintiff maintains that even if the appointment of a guardian is not required as a procedural protection, he has an equal protection right to one, stemming from the fact that persons committed under Wis. Stat. § 55.06 are provided a guardian before a decision can be made regarding their medication when they are incompetent to refuse it. As defendants point out, however, persons committed pursuant to § 55.06 are not similarly situated. They are protectively placed with the Department of Health and Social Services, not committed after having been found to have committed a crime and acquitted by reason of insanity. *See* discussion in *State ex rel. Roberta S.*, 171 Wis.2d 266, 491 N.W.2d 114. *See also Barichello v. McDonald*, 98 F.3d 948, 952–53 (7th Cir. 1996) ("We have found no case ... holding that the state is powerless to distinguish between criminal and civil patients in matters of treatment.")

Even if persons committed under § 971.17 were situated similarly to persons protectively placed under § 55.06, a good reason exists for treating them differently with respect to the appointment of guardians. Persons committed under § 971.17 (and § 51.20) can be medicated forcibly upon proper findings; persons committed under § 55.06 cannot. *State ex rel. Roberta S.*, 171 Wis.2d at 274–78, 491 N.W.2d at 117–19. As discussed above, the appointment of a guardian is helpful in determining a ward's true wishes; when those wishes are irrelevant, there is no need to appoint a guardian.

### F. *Summary*

■ Plaintiff has established that Wis. Stat. § 971.1 7(3)(c) is unconstitutional in several respects. It does not require findings that the incompetent inmate poses a risk of harm to himself or others if he is not medicated, in light of the institution's legitimate needs. It does not require a showing that the administration of psychotropic medication is in the inmate's medical interests and it does not require regular reviews of the medication decision. Moreover, inmates are

entitled to have less intrusive alternatives to medication considered as part of the decision to medicate, to the extent that the presence or absence of such alternatives sheds light on the reasonableness of the state's request for forced medication. They are not entitled under either the due process clause or the equal protection clause to the appointment of guardians to represent their interests at the medication hearing. It is appropriate to enjoin the continued administration of psychotropic drugs to plaintiff until and unless the constitutionally required findings of dangerousness and medical benefit are made by an independent decision maker and to declare the statute unconstitutional in the respects set out above.

Defendants have raised the defense of qualified immunity. To prevail on that defense, they will have to prove that it was not clearly established at all material times that a court authorization of forcible medication could be made only on findings of current dangerousness within the institution and on the inmate's medical interests. I express no opinion on the merits of that defense, which is not before the court at this time.

### ORDER

IT IS ORDERED that plaintiffs motion for summary judgment is GRANTED. FURTHER, IT IS ORDERED that Wis. Stat. § 971.17(3)(c) is unconstitutional to the extent it permits persons committed to the custody of the Wisconsin Department of Health and Services after they have been acquitted of criminal conduct by reason of mental illness to have psychotropic medication administered to them upon a finding they are incompetent to refuse medication, without the concomitant findings that they pose a current risk of harm to themselves or others and that medication is in their medical interests, given the legitimate needs of their institutional confinement. Defendants are enjoined from administering psychotropic medication to plaintiff until they have established before an independent decision maker both that plaintiff poses a current risk of harm to himself or others and that medication is in his medical interest, given the legitimate needs of his institutional confinement.

A scheduling conference will be held on November 20, 1996 at 9:00 a.m. to discuss and schedule further proceedings in this case.