Mr. William R. Glaves Corporation Counsel Vilas County Post Office Box 369 Eagle River, WI 54521
Dear Mr. Glaves:
You have requested my opinion on the authority of persons appointed as guardians under the Wisconsin Statutes to consent to medical treatment, including involuntary administration of psychotropic medications, for their wards. Specifically, you have asked:
1. May a guardian authorize or give consent for medication or medical treatment, including psychotropic medication, for the guardian's ward?
A guardian may give consent for general medical treatment without a court order. A guardian may make health care decisions for the ward unless a court specifically finds that the ward is competent to make health care decisions, or unless the ward has a health care agent, under a valid power of attorney for health care, who is not the guardian. A guardian's consent to administer psychotropic medication probably must be preceded by a finding by a court under Wis. Stat. §§ 880.07 (1m) and 880.33
(4m) that the ward is not competent to refuse psychotropic medication.
2. May a guardian authorize or give consent for the involuntary or forcible administration of medication or treatment, including psychotropic medication, for the guardian's ward?
Neither Wisconsin courts nor the Wisconsin Legislature have addressed whether a guardian may consent to involuntary administration of medication or medical treatment other than psychotropic medication. I conclude that it is likely that the courts would find that a guardian has authority to consent to the involuntary administration of medication or medical treatment that is clearly in the ward's best interest. A guardian probably does not have authority to consent to involuntary or forcible administration of psychotropic medication without a court order authorizing this consent under Wis. Stat. § 880.33 (4r).
3. Would the answer to either of the above questions change if the guardian's ward is protectively placed in a nursing home or other facility? *Page 2 
Wisconsin Stat. ch. 55, establishing the protective service and protective placement systems, does not expand a guardian's rights as provided elsewhere in the statutes. Consequently, the guardian's authority to consent to medication is neither expanded nor reduced by the ward's protective placement under Wis. Stat. ch. 55.
This opinion begins with a discussion of pertinent definitions. It then considers a guardian's authority to consent to medication or medical treatment other than psychotropic medication. Next, the opinion considers the guardian's authority to consent to the administration of psychotropic medication. The opinion then addresses the guardian's authority to consent to forcible or involuntary administration of psychotropic medications and of general medications or medical treatment. The opinion concludes with an analysis of the effect of an order for protective placement on a guardian's authority to consent to medication, including psychotropic medication.
Guardians' Authority Under Wis. Stat. Chs. 48 and 880
Under Wisconsin law, all minors and incompetents are subject to guardianship. See Wis. Stat. § 880.03. A "`guardian'" is defined as "one appointed by a court to have care, custody and control of the person of a minor or an incompetent or the management of the estate of a minor, an incompetent or a spendthrift." See Wis. Stat. § 880.01 (3). An "`[i]ncompetent'" is one "adjudged by a court of record to be substantially incapable of managing his or her property or caring for himself or herself by reason of infirmities of aging, developmental disabilities, or other like incapacities. Physical disability without mental incapacity is not sufficient to establish incompetence." See Wis. Stat. § 880.01 (4). A guardian may be a guardian of the person of an incompetent, or a guardian of the property of the incompetent, or both.See Wis. Stat. § 880.03. A "ward" is one for whom a guardian has been appointed. See Wis. Stat. § 880.01 (10). I understand your questions to relate to the powers vested in a guardian of the person. Throughout this opinion, therefore, the use of the term "guardian" is meant to refer to a guardian of the person.
The courts also have authority under Wis. Stat. chs. 48 and 880 to appoint a guardian for a child. A guardian appointed under Wis. Stat. ch. 48 has
 the duty and authority to make important decisions in matters having a permanent effect on the life and development of the child and the duty to be concerned about the child's general welfare, including but not limited to:
 (1) The authority to consent to . . . major medical, psychiatric and surgical treatment. . . .
See Wis. Stat. § 48.023. Where the court appoints a guardian for a child adjudged to be in need of protection or services, that guardian may be a relative of the child as provided in Wis. Stat. *Page 3 
§ 48.977. The court may also appoint a "standby" guardian for a child.See Wis. Stat. § 48.978. Both of these sections provide that the duties and authority of guardians under Wis. Stat. ch. 880 remain in effect even if the guardianship appointment is made under Wis. Stat. ch. 48. See
Wis. Stat. §§ 48.977 (8) and 48.978 (7). Thus, while certain provisions of the guardianship and mental health statutes treat adults and minors separately, the rights of their guardians to consent to or refuse medical treatment are the same in all important respects.
Consent to Medication or Medical Treatment Other Than PsychotropicMedication
As a general matter, guardians have authority to consent to medical treatment for their wards. See Viney, Guardianship and ProtectivePlacement for the Elderly in Wisconsin § 6.6 (1996) ("a guardian of the person is considered to have the power to consent to medical treatment for the benefit of the ward. The guardian does not have the authority, however, to consent to medical care that does not serve the ward's interest. Nor may the guardian consent to psychosurgery, electroconvulsive treatment, or "other drastic treatment procedures.'"). This authority comes from the guardian's obligation to "endeavor to secure necessary care, services or appropriate protective placement on behalf of the ward." See Wis. Stat. § 880.38 (2). The guardian is also obligated to make an annual report on the ward's health condition to the court that ordered the guardianship. See Wis. Stat. § 880.38 (3).
A guardian appointed for an incompetent ward may exercise the same health care decision-making authority that could be vested in a health care agent under Wis. Stat. ch. 155, unless the ward also has a health care agent. See In Matter of Guardianship of L.W., 167 Wis.2d 53, 82,482 N.W.2d 60 (1992) (analyzing Wis. Stat. §§ 880.33 (3) and 155.60 (2) and concluding that "the clear indication is that a guardian has identical decision-making powers as a health care agent"). Under Wis. Stat. ch. 155, a health care agent has authority to make health care decisions for the principal, although the agent may not admit or commit the principal to an inpatient facility except for recuperative or respite care, or under the commitment and placement proceedings in Wis. Stat. chs. 51 and 55. See Wis. Stat. § 155.20 (2). In addition, a health care agent may not consent to "experimental mental health research or to psychosurgery, electroconvulsive treatment or drastic mental health treatment procedures for the principal." See Wis. Stat. § 155.20 (3). The health care agent, therefore, may make all other medical decisions for the principal, consistent with the principal's wishes as expressed in the power of attorney for health care instrument. See Wis. Stat. § 155.20
(5). The desires of a principal who is not incapacitated, however, supersede the power of attorney for health care instrument at all times.See Wis. Stat. § 155.05 (4).
Where a ward is incompetent and, prior to becoming incompetent, has executed a power of attorney for health care under Wis. Stat. ch. 155, the court appointing a guardian for that person may leave that power of attorney instrument in effect. See Wis. Stat. § 880.33 (8)(b). If the court allows the power of attorney to remain effective, the court shall, as part of the guardianship appointment, order that the guardian's authority to make health care decisions for *Page 4 
the ward be limited by the terms of the power of attorney for health care. See id.; see also Wis. Stat. § 155.60 (2). Conversely, if the court does not order the power of attorney for health care to remain effective as part of the guardianship appointment, then the power of attorney for health care is revoked upon the appointment of the guardian. See Wis. Stat. § 155.60 (2).
A guardian is appointed to exercise the ward's rights on his or her behalf, where the ward is incompetent to exercise those rights. Accordingly, the court may make a finding of limited incompetence and may determine that the ward is competent to exercise certain rights. See
Wis. Stat. § 880.33 (3). If the court orders that the ward is competent to make health care decisions, his or her guardian would be without authority to make those decisions. If a court has not found the ward to be competent to make health care decisions, and if the ward does not have a valid power of attorney for health care, a guardian may make health care decisions on the ward's behalf, including consenting to medical treatment other than the administration of psychotropic medication.
Consent to Psychotropic Medication
A guardian is probably required to obtain a court order authorizing the guardian to consent to the voluntary administration of psychotropic medication for the ward. Under current law, a petition for guardianship may include allegations that the prospective ward is not competent to refuse psychotropic medication. See Wis. Stat. § 880.07 (1m). The petition must allege, in part, that the ward would benefit from psychotropic medication, that the ward is substantially likely to suffer harm or to cause harm to others without the medication and that the ward has a history of refusing medication. See id. If these elements are proven, the court may order the appointment of a guardian to consent to or refuse psychotropic medication. See Wis. Stat. § 880.33 (4m). Along with this appointment, the court must order the county to develop a treatment plan for the ward, review and approve the plan, order protective services under Wis. Stat. ch. 55 and order the county to ensure that appropriate protective services are provided to the ward. See id.
Wisconsin Stat. ch. 880 defines "`[n]ot competent to refuse psychotropic medication' . . ." to include those who, because of chronic mental illness, are incapable of expressing an understanding of the advantages and disadvantages of treatment and its alternatives or of applying such an understanding in order to make an informed choice. See
Wis. Stat. § 880.01(7m). The findings of Wis. Stat. § 880.07 (1m) appear to be limited to those who reside in the community and are unable to provide for their care in the community because they refuse to take needed medication. Despite the limitations contained in these two sections, I conclude that a court would likely hold that a judicial determination that a ward is not competent to refuse psychotropic medication is required before a guardian may consent to the administration of that medication to any ward. *Page 5 
Individuals who are not chronically mentally ill, and individuals who are no longer living independently, have no less right to due process protections before being deprived of their right to give consent to the administration of psychotropic medications. Cf. Washington v. Harper,494 U.S. 210, 221-22 (1990) (holding that competent, incarcerated individuals had substantial liberty interests in refusing administration of psychotropic medication). As a matter of equal protection, therefore, it appears that a court faced with this question would conclude that all individuals, including those who are not currently institutionalized and not chronically mentally ill, would be entitled to a judicial determination that they are not competent to refuse psychotropic medication under Wis. Stat. § 880.33 (4m) before their guardians could act on their behalf and consent to the administration of that medication. Cf. Jones v. Gerhardstein, 141 Wis.2d 710, 416 N.W.2d 883
(1987); State ex rel. Watts v. Combined Community Services, 122 Wis.2d 65,91, 362 N.W.2d 104 (1985) (holding that guardians could not consent to admission of wards to psychiatric hospitals without following relevant procedures of Wis. Stat. ch. 51).
Wisconsin Stat. §§ 880.07 (1m) and 880.33 (4m) were created by1987 Wisconsin Act 366, which was enacted on April 22, 1988, following the Wisconsin Supreme Court's decision in Jones. In Jones, the court concluded that individuals committed under Wis. Stat. ch. 51 were entitled to the same due process protections as pre-commitment detainees, including a finding of incompetence to refuse medication, before having medication administered to them without their consent. The record in the case demonstrated that many individuals who were proper subjects for commitment under Wis. Stat. ch. 51 nevertheless were competent to make decisions regarding the acceptance of psychotropic medication. See Jones, 141 Wis.2d at 730. The court concluded that no rational basis existed for extending the right to refuse medication, absent a court order, to pre-commitment detainees but not to those who had been committed. See id. at 735. Although Jones involved the involuntary administration of psychotropic medication, discussed in more detail below, its equal protection analysis is instructive.
Similarly, it is unlikely that a court would conclude that a rational basis exists for providing extensive procedural protections before permitting a guardian to consent to the administration of psychotropic medication to a chronically mentally ill individual who is living independently, see Wis. Stat. §§ 880.01(7m) and 880.07 (1m)(b), while denying those same protections to other wards or prospective wards. An individual may be found to be incompetent to care for himself or herself within the meaning of Wis. Stat. § 880.01 (4), but it does not follow afortiori that the same individual is incompetent to make decisions regarding psychotropic medication. Cf Wis. Stat. § 880.33 (3) (permitting limited guardianships where the ward remains authorized to exercise certain rights); Jones, 141 Wis.2d at 737 ("In each class competency to choose must be presumed unless the condition of the individual is shown to be otherwise."). If the mere appointment of a guardian conferred authority to consent to the administration of psychotropic medication, there would have been no need for the Legislature to add the particular findings required under Wis. Stat. § 880.07 (1m) regarding consent to psychotropic medication. *Page 6 
Reading Wis. Stat. ch. 880 to require a court to authorize any guardian to consent to the administration of psychotropic medication is further supported by Wis. Stat. § 55.05 (2)(d), which provides that even where an individual is determined to be incompetent and a guardian is appointed under Wis. Stat. § 880.33, a court must make the findings required by Wis. Stat. § 880.33 (4m) before ordering psychotropic medication as a protective service. Wisconsin Stat. § 55.05 (2)(b) provides that "[a] guardian may request and consent to protective services on behalf of the guardian's ward," but a court must order psychotropic medication.
Accordingly, I expect that a Wisconsin court faced with the question would conclude, in light of the provisions of Wis. Stat. §§ 880.07
(1m) and 880.33 (4m) and equal protection principles, that a court must specifically determine that the individual is not competent to refuse psychotropic medication before permitting the guardian to consent to such medication.
Forcible Administration of Psychotropic Medication
If the ward refuses to take the psychotropic medication voluntarily and the court has appointed a guardian to consent to or refuse psychotropic medication under Wis. Stat. § 880.33 (4m), the court may authorize the guardian to consent to the forcible administration of the medication under the circumstances provided in Wis. Stat. § 880.33 (4r). This section of the statutes specifically applies to wards who are receiving protective services under Wis. Stat. § 55.05 (2)(d). The statutes are silent on whether the requirements of Wis. Stat. § 880.33 (4r) apply to wards who have been protectively placed under Wis. Stat. § 55.06. Nevertheless, because of the important constitutional interests at issue, it is likely that a court would conclude that a guardian could not consent to the involuntary or forcible administration of psychotropic medication for a ward who has been protectively placed without a court order under either Wis. Stat. ch. 880 or 51. A guardian who has been authorized to consent to the involuntary administration of psychotropic medication under Wis. Stat. § 880.33 (4r) may, of course, decline to give that consent. In such a case, the court must employ the procedures in Wis. Stat. § 51.61 (1)(g)2. to order the forcible administration of psychotropic medication without the guardian's consent.
The steps provided in Wis. Stat. § 880.33 (4r), while potentially cumbersome, are required to preserve the ward's liberty interest in not being subjected to unwarranted administration of psychotropic medication. In St. ex rel. Roberta S. v. Waukesha DHS, 171 Wis.2d 266,491 N.W.2d 114 (Ct.App.), review denied, 494 N.W.2d 211 (1992), the court described the role of the guardian in consenting to or refusing psychotropic medication:
 [A] guardianship for the purpose of consenting to or refusing psychotropic medication is to be used primarily for the protection of the ward. A guardian, therefore, is appointed to ensure that a ward is not unnecessarily or improperly medicated. The guardian's exercise of consent simply means that he or she makes *Page 7 
an informed decision about the propriety of the treatment when the ward is unable to do so.
Id. at 275. The court counseled that guardianships are not to be used as "weapons with which to force medication on unwilling individuals." Id.
Less than two years after this decision, the Legislature adopted1993 Wisconsin Act 316, which amended Wis. Stat. chs. 51, 55 and 880 to give guardians authority to consent to forcible administration of psychotropic medication, contingent upon a court's approval.
Roberta S. involved an individual who was living independently and had not been protectively placed. See 171 Wis.2d at 271. The court's opinion did not turn on this factual circumstance, however, but was based instead upon the protective nature of guardianships and the important liberty interests in refusing unwanted administration of psychotropic medication. The United States Supreme Court has held that competent individuals, including incarcerated individuals, possess a "significant liberty interest" under the United States Constitution in refusing the forced administration of psychotropic drugs. See Washington,494 U.S. at 221-22. Incompetent individuals possess the same interests.See Enis v. Dept. of Health Social Services of Wisc.,962 F. Supp. 1192, 1200 (W.D. Wis. 1996). Various courts have held that this right stems from the liberty interest against unwanted bodily invasions, as well as from the substantial risks and side effects of some psychotropic medications. See Washington, 494 U.S. at 229-30; Felce v.Fiedler, 974 F.2d 1484, 1497 (7th Cir. 1992); Jones, 141 Wis.2d at 727-28. An individual's interest in avoiding the involuntary administration of psychotropic medication is sufficient to require substantial due process protections before such medications may be administered. See Washington,494 U.S. at 235; Felce, 974 F.2d at 1500 (holding that a process that allowed a parole agent to impose as a condition of parole the involuntary administration of psychotropic medication violated the parolee's constitutionally protected liberty interests, and requiring a hearing before an independent decision maker to determine whether this condition furthered the objectives of parole).
Wisconsin courts have consistently declined to permit orders for involuntary psychotropic medication to be made unless they are specifically authorized by statutes that provide due process to the individual who may be medicated. See, e.g., In Matter of Mental Conditionof Virgil D., 189 Wis.2d 1, 524 N.W.2d 894 (1994); Roberta S.,171 Wis.2d at 268; Jones, 141 Wis.2d at 745; Matter of Guardianship ofK.N.K., 139 Wis.2d 190, 206, 407 N.W.2d 281 (1987), review denied subnom, K.N.K. v. Buhler, 138 Wis.2d 532, 412 N.W.2d 893 (1987). In Matterof Guardianship of K.N.K., the court of appeals concluded that the procedures in Wis. Stat. ch. 55 for securing protective placement and protective services did not include authority for a court to order involuntary administration of psychotropic medication for an individual in need of protective placement or services. See Matter of Guardianshipof K.N.K., 139 Wis.2d at 205-06. In In Matter of Mental Condition ofVirgil D., the Wisconsin Supreme Court held that a court's authority to order involuntary medication under Wis. Stat. § 51.61 (1)(g)4. is limited to circumstances where the conditions set forth in that section are *Page 8 
satisfied. See In Matter of Mental Condition of Virgil D., 189 Wis.2d at 5. The court found that the circuit court had erred by ordering involuntary administration of psychotropic medication based on a finding not reflected in the statutes. See id.
The process set forth in Wis. Stat. § 880.33 (4r) must be followed even though the guardian has been authorized to consent to the voluntary administration of psychotropic medication under Wis. Stat. § 880.33
(4m). Because of the uniquely invasive nature of forced administration of medication that is designed to alter cognitive processes, however, the Legislature has chosen to require court involvement before such medication may be involuntarily or forcibly administered. See Jones,141 Wis.2d at 742; Wis. Stat. §§ 5l.61 (1)(g) and 880.33 (4r). I am aware that the concerns about psychotropic medication expressed in Washington,Jones and other cases may be outdated in light of advances in the development and prescription of these medications. Until the courts and the Legislature adopt a more permissive approach toward these medications, however, I must conclude that a guardian has authority to consent to the forcible or involuntary administration of psychotropic medication for a ward who has not been protectively placed only where the procedures of Wis. Stat. § 880.33 (4r) have been followed.
The procedures in Wis. Stat. § 880.33 (4r) do not explicitly apply to individuals who have been protectively placed in a nursing or residential facility under Wis. Stat. § 55.06. See, e.g., Wis. Stat. § 880.33 (4r)(b) (empowering the court, upon appropriate findings, to authorize a guardian to consent to forcible administration of psychotropic medication on an outpatient basis). An argument could therefore be made that the guardian of a ward who has been protectively placed may consent to the involuntary or forcible administration of these medications to such a ward without court involvement. Because I do not read Wis. Stat. ch. 55 to alter the otherwise existing rights and responsibilities of wards and guardians regarding consent for all types of medication, as discussed below, I am unable to conclude that a guardian may consent to the involuntary or forcible administration of psychotropic medication for a protectively placed ward without court involvement under either Wis. Stat. ch. 51 or 880. See Roberta S., 171 Wis.2d at 277-78; Matter of Guardianship ofK.N.K, 139 Wis.2d at 206-07.
I am similarly unable to conclude that the Legislature's use of the term "forcible administration" in Wis. Stat. § 880.33 (4r) means that a guardian may consent, without court involvement, to the administration of psychotropic medication in a manner that is involuntary but not forcible. The cases discussed above recognize two parts to the constitutional interest at stake: the right to be free from unwanted bodily invasion, including forcible invasion, and the right to be free from the unwarranted administration of drugs whose purpose is "to alter the chemical balance in a patient's brain, leading to changes, intended to be beneficial, in his or her cognitive processes." See Washington,494 U.S. at 229. While involuntary administration of psychotropic medications, making use of sleight of hand rather than physical force, satisfies the concern about forcible bodily invasions, it does not address the second part of the analysis. Felce, for example, addressed the due process required before a parolee could be subjected to *Page 9 
psychotropic administration administered involuntarily, not forcibly. SeeFelce, 974 F.2d at 1495 (holding that Felce had a liberty interest in being free from the involuntary use of psychotropic medication during mandatory parole). Wisconsin courts, however, have not yet provided guidance as to whether the distinction between involuntary and forcible administration is a constitutionally meaningful one.
Forcible Administration of Other Medication or Medical Treatment
Wisconsin courts have not addressed the scope of the guardian's authority to consent to the involuntary administration of clearly beneficial medication or medical treatment, such as medication needed to ameliorate a treatable disease or medical condition, if the ward is resistant to the medication or medical treatment. Suppose, for example, that an individual determined to be incompetent to make medical decisions contracts strep throat, needs antibiotics to treat the infection, but refuses to swallow those antibiotics voluntarily. Two prior cases suggest that a guardian would be without authority to consent to highly invasive, irreversible medical procedures that were of little or no benefit to the ward. See In Matter of Guardianship of Eberhardy,102 Wis.2d 539, 578, 307 N.W.2d 881 (1981) (directing the circuit courts to refrain from exercising jurisdiction over guardians' requests to give consent to the sterilization of their wards due to the relatively irreversible nature of the procedure and the lack of legislative guidance on the underlying policy issues); In re Guardianship of Pescinski,67 Wis.2d 4, 7, 266 N.W.2d 180 (1975) (declining to authorize a guardian to consent to the removal of a ward's kidney for purposes of donation to the ward's sister because "[t]here is absolutely no evidence here that any interests of the ward will be served by the transplant."). These cases do not, however, address a guardian's authority to consent to medical procedures that are in the ward's best interest.
In Spahn v. Eisenberg, 210 Wis.2d 557, 563 N.W.2d 485 (1997), a case addressing the guardian's authority to consent to the termination of life-sustaining medical procedures for a ward not in a persistent vegetative state, the court concluded that where a ward's wishes regarding medical treatment can be determined by a preponderance of the evidence, then it is in the ward's best interest to have those wishes honored. See id at 569. This might suggest that the ward's refusal to participate voluntarily in any medical treatment, however benign, should be honored as an expression of the ward's wishes. See generally Viney,Guardianship and Protective Placement for the Elderly in Wisconsin
§ 6.6 (citing Roberta S., 171 Wis.2d at 266, for the proposition that "[a] guardian of the person probably does not have the authority to force medical treatment on an unwilling ward."). However, the court in Spahn
also held that where a ward is not in a persistent vegetative state, and where the ward has not made her wishes as to medical decisions perfectly plain, it is in the ward's best interest to continue life-sustaining measures. In other words, it is in the ward's best interest to pursue treatment. See id. at 567-68; see also In re Guardianship of Pescinski,67 Wis.2d at 7 (holding that the guardian's obligation in making medical decisions is to act "`loyally in the best interests of his ward'"),quoting Guardianship of Nelson, 21 Wis.2d 24, 32, 123 N.W.2d 505 (1963). *Page 10 
If the ward has been found incompetent to make health care decisions, I conclude that Wisconsin courts would likely find that a guardian has authority to consent to the forcible administration of medication and treatment that is in the ward's best interest, that is to say for the ward's benefit, other than psychotropic medication or the experimental and extraordinary measures described in Wis. Stat. §§ 155.20 (3) and 51.61. This conclusion follows from the guardian's general obligation to secure necessary care and services for a ward, and from the presumption that the ward has been determined to be incompetent to make an informed, independent judgment on medical matters. A ward's refusal to take medication, or to follow a course of medical treatment, cannot necessarily be viewed as an expression of the ward's conscious desire to refuse that medication or medical treatment. An incompetent individual for whom a guardian has been appointed is presumed to be unable to care for himself or herself or to make appropriate decisions about medical care. Without the guardian's consenting to forcible administration of medication or treatment that the ward refuses, the ward's health could easily be jeopardized.
Although In Matter of Guardianship of L.W. dealt with a guardian's authority to refuse life-sustaining medical treatment for a ward in a persistent vegetative state, its instruction on the appropriate exercise of the best interest analysis may provide guidance for guardians faced with difficult medical decisions. The court counseled the guardian to begin with the presumption that treatment of the medical condition at issue is in the ward's best interest. See In Matter of Guardianship ofL.W., 167 Wis.2d at 86. Assessment of the ward's best interests involves consideration of the invasiveness of the medication or procedure, its chances of success and its likely side effects. See id. at 87. The guardian is to assess these factors "from the standpoint of the patient, and should not substitute his or her own view of the `quality of life' of the ward." See id. at 88.
Given the courts' extended discussions of the guardian's obligation to act in the ward's best interests, and given the preference expressed inSpahn, In Matter of Guardianship of L.W. and In re Guardianship ofPescinski for continued treatment, a court would likely find that a guardian may consent to the forced administration of medically necessary, beneficial medication or medical treatment that is in the ward's best interest. Because this is an open question under Wisconsin law, however, we will have to await further guidance from the courts.
Protective Placement
Your final question asks whether the guardian's authority to consent to medical treatment of any kind, including psychotropic medication, whether administered voluntarily or involuntarily, is affected by the ward's protective placement under Wis. Stat. ch. 55. I conclude that the guardian's authority is not affected by such a placement. *Page 11 
Wisconsin Stat. ch. 55 contains a declaration of policy that provides some guidance on this issue:
 The legislature recognizes that many citizens of the state, because of the infirmities of aging, chronic mental illness, mental retardation, other developmental disabilities or like incapacities incurred at any age, are in need of protective services. These services should, to the maximum degree of feasibility under programs, services and resources that the county board of supervisors is reasonably able to provide within the limits of available state and federal funds and of county funds required to be appropriated to match state funds, allow the individual the same rights as other citizens, and at the same time protect the individual from exploitation, abuse and degrading treatment. This chapter is designed to establish those services and assure their availability to all persons when in need of them, and to place the least possible restriction on personal liberty and exercise of constitutional rights consistent with due process and protection from abuse, exploitation and neglect.
Wis. Stat. § 55.01. Wisconsin Stat. § 55.07 provides that the patients' rights provided in Wis. Stat. § 51.61 apply to individuals who receive services under Wis. Stat. ch. 55. Accordingly, individuals who are protectively placed under Wis. Stat. ch. 55 have the right to be free from the involuntary or forcible administration of psychotropic medications absent due process. See Wis. Stat. § 51.61 (1) and (1)(g). The guardian's role when a ward is protectively placed under Wis. Stat. ch. 55 is to "take reasonable steps to assure that the ward is well treated, properly cared for, and is provided with the opportunity to exercise legal rights." See Wis. Stat. § 55.06 (15).
In addition to this statutory guidance, the equal protection guarantees of the Wisconsin and United States Constitutions would appear to require that individuals who are protectively placed have the same rights to refuse psychotropic medication, absent due process, that are extended to individuals who are not protectively placed. See Wis. Const. art. I, § 1;U.S. Const. amend XIV, § 1. Various courts have held that incarcerated individuals, for example, have constitutionally protected liberty interests in being free from unwanted administration of psychotropic medication without due process. See, e.g., Washington, 494 U.S. at 229-30;Felce, 974 F.2d at 1497; Enis, 962 F. Supp. at 1200. The Wisconsin Court of Appeals held in Matter of Guardianship of K.N.K.,139 Wis.2d at 205-06, that Wis. Stat. ch. 55 did not give the courts authority to enter orders for involuntary administration of psychotropic medication, and also held that the patients' rights in Wis. Stat. § 51.61
applied to protectively placed individuals. *Page 12 
In light of the statutes and cases discussed above, I find no basis to conclude that a ward's right to be free from involuntary administration of medication, including psychotropic medication, is affected by an order for protective placement or services under Wis. Stat. ch. 55.
Sincerely,
 James E. Doyle Attorney General