**COURT OF APPEALS
DECISION
DATED AND FILED**

**February 13, 2024**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP1072**

STATE OF WISCONSIN

Cir. Ct. No. 2023ME2

IN COURT OF APPEALS
DISTRICT III

---

IN THE MATTER OF THE MENTAL COMMITMENT OF K. A. D.:

DOUGLAS COUNTY,

    PETITIONER-RESPONDENT,

 V.

K. A. D.,

    RESPONDENT-APPELLANT.

---

APPEAL from an order of the circuit court for Douglas County: KELLY J. THIMM, Judge. *Affirmed.*

¶1 STARK, P.J.[1] Kyle[2] appeals an order for his involuntary medication and treatment pursuant to WIS. STAT. § 51.61(1)(g).[3] Kyle argues that

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

Douglas County failed to prove both that he was given an adequate explanation of the advantages, disadvantages, and alternatives to accepting recommended medication and treatment and that he is incompetent to refuse medication or treatment.[4] In response, the County asserts that Kyle's appeal is moot, but if we nevertheless address the merits of Kyle's appeal, the County argues that we should affirm.

¶2 We assume without deciding that Kyle's appeal is moot, but we conclude that an exception to the mootness doctrine applies. This case poses an exceptional or compelling circumstance such that the issue is capable and likely of repetition, yet evades review. We determine that the County met its burden to prove Kyle was given the required explanation of the advantages, disadvantages, and alternatives to medication and treatment and that to the extent the explanation was insufficient, Kyle's conduct excused Dr. Bales' failure to provide additional explanation. We further conclude that the County presented sufficient evidence for the circuit court to find that Kyle is incompetent to refuse medication and treatment. We therefore affirm.

## BACKGROUND

¶3 In February 2023, the County filed a WIS. STAT. ch. 51 petition for Kyle's mental commitment and the involuntary administration of his medication

---

[2] For ease of reading, we refer to the appellant in this confidential matter using a pseudonym, rather than his initials.

[3] Kyle does not appeal the order extending his involuntary commitment pursuant to WIS. STAT. § 51.20.

[4] Kyle does not dispute that he is mentally ill, that his mental illness is treatable, or that he had stopped taking his medication before the County filed its petition.

and treatment. The petition alleged that Kyle was mentally ill, a proper subject for treatment, and dangerous to himself or others due to Kyle being increasingly paranoid, physically aggressive, and punching a staff member at his residential facility. The circuit court ordered that Kyle undergo a medical evaluation and be detained pending a hearing to determine whether there was probable cause to commit him pursuant to WIS. STAT. § 51.20. After the hearing, the court found probable cause to commit Kyle, scheduled a final hearing, and appointed Marshall Bales, a psychiatrist, and James Black, a psychologist, to examine Kyle.

¶4      At the final hearing, the circuit court heard testimony from both doctors as well as Raymone Grier, a mental health worker at Kyle's residential facility. Doctor Bales testified that he examined Kyle in February 2023, but he explained that he had to abbreviate the examination due to Kyle being "agitated, paranoid, angry, [and] hostile." As a result, Bales believed that it was not safe to "try to talk to him for a long time." Kyle refused to be seated during the examination, which lasted approximately five minutes. The examination began with Bales reviewing Kyle's medication and explaining to Kyle "in as much detail as [he] could" that his medication "can help," "ha[s] benefits with low side effects," and that there were "no good alternatives." However, Bales stated that he could not go into much detail and that Kyle did not offer an opinion about Abilify, the medication that Bales discussed. Kyle instead responded with profanities and an obscene gesture before walking away.

¶5      Doctor Bales went on to testify about Kyle's mental diagnoses, his history of violent behavior, and other symptoms of his diagnoses. Bales then recommended a six-month commitment "[w]ith an involuntary medication order" and stated that he "explained the advantages, disadvantages, and alternatives to medication to [Kyle]" "[a]s best [he] could, and … [as he has] in the

past …. [H]e's not proven to be frankly competent to refuse at all." Bales opined that Kyle was unable to apply an understanding of his medication to his own situation. His reports listed the full advantages, disadvantages, and alternatives to medication for Kyle, and these reports were admitted into evidence.[5] The reports stated that Kyle was incapable of expressing an understanding of the advantages, disadvantages, and alternatives to medication and that Kyle was substantially incapable of applying an understanding of the advantages, disadvantages, and alternatives to his own condition.

¶6 Doctor Black testified about Kyle's diagnoses but he stated that he did not discuss medications with Kyle. Grier testified that Kyle had been refusing to take his medication for one month before the County filed its petition. Grier also described an incident where Kyle struck a staff member at the residential facility.

¶7 The circuit court found that Kyle was mentally ill, a proper subject for treatment, and dangerous to others. The court ordered that Kyle be committed to a locked inpatient facility for six months and also ordered the involuntary

---

[5] Doctor Bales wrote an examination report and an amended examination report. The first examination report erroneously made a recommendation for an extension of Kyle's WIS. STAT. ch. 51 commitment. The amended report corrected this error and instead recommended Kyle's initial ch. 51 commitment. Both reports were referenced during Bales' testimony at the final hearing.

administration of psychotropic medication.[6]  Kyle now appeals the involuntary medication order.

## DISCUSSION

¶8    On appeal, Kyle argues that we must presume that he is competent to make medication choices and that the County failed to prove that he is incompetent to refuse medication and treatment.  He contends that the circuit court's order for his involuntary medication and treatment must therefore be reversed.

¶9    The County notes that Kyle's medication order expired in August 2022.  Because Kyle is no longer subject to that order, the County contends that vacating that order would have no practical effect, and, therefore, Kyle's appeal is moot.

¶10  "Mootness is a question of law we review de novo." *Portage County v. J.W.K.*, 2019 WI 54, ¶10, 386 Wis. 2d 672, 927 N.W.2d 509. "An issue is moot when its resolution will have no practical effect on the underlying controversy." *PRN Assocs. LLC v. DOA*, 2009 WI 53, ¶25, 317 Wis. 2d 656, 766 N.W.2d 559. "[A]n appeal of an expired commitment order—

---

[6] In its oral ruling, the circuit court stated that Kyle is incapable of expressing an understanding of the advantages, disadvantages, and alternatives to his medication.  The written order, however, states that Kyle is not competent to refuse medication because he is "substantially incapable of applying an understanding of the advantages, disadvantages and alternatives to his … condition in order to make an informed decision as to whether to accept or refuse psychotropic medications."  We note that "an unambiguous oral pronouncement controls" when there is a conflict between an oral pronouncement and a written order. *See State v. Prihoda*, 2000 WI 123, ¶24, 239 Wis. 2d 244, 618 N.W.2d 857.  Thus, this court analyzes whether Kyle is incapable of expressing an understanding of the advantages, disadvantages, and alternatives to his medication.  Kyle does not challenge the discrepancy between the court's oral ruling and written order.  Accordingly, we do not address this issue any further.

whether an initial commitment order or a recommitment order—is not moot due to continuing collateral consequences of the firearms ban required under a commitment order, as well as liability for the cost of care." ***Outagamie County v. L.X.D.-O.***, 2023 WI App 17, ¶12, 407 Wis. 2d 441, 991 N.W.2d 518, *review denied* (WI May 24, 2023) (No. 2020AP1806). However, "there is no 'causal relationship' between [a] medication order *alone* and the collateral consequences stemming from [a] commitment." ***Id.***, ¶14 (second alteration in original; citation omitted).

¶11     Kyle argues that his appeal of the expired medication order is not moot due to its effect on the cost of care for which he is liable. The County argues that there is no direct causal relationship between the involuntary medication order and the cost of Kyle's care, as the costs associated with medication and staffing would remain due to the staff offering medication and treatment for Kyle on a voluntary basis. For purposes of this appeal, we will assume without deciding that Kyle's cost-of-care liability does not save the expired medication order from mootness. *See* ***Marinette County v. A.M.N.***, No. 2022AP1395, unpublished slip op. ¶24 (WI App Aug. 29, 2023), *review denied* (WI Jan. 23, 2024).[7] However, we conclude that Kyle's case falls within an exception to the mootness doctrine.

¶12     This court may decide to "address moot issues in 'exceptional or compelling circumstances,'" which include that "the issue is 'capable and likely of repetition and yet evades review.'" ***J.W.K.***, 386 Wis. 2d 672, ¶12 (citations omitted). This exception "is limited to situations involving 'a reasonable

---

[7] Unpublished opinions authored by a single judge and issued on or after July 1, 2009, may be cited for their persuasive value. *See* WIS. STAT. RULE 809.23(3)(b).

expectation that the same complaining party would be subjected to the same action again.'" *Id.*, ¶30 (alterations omitted; citation omitted).

¶13 There is evidence in Kyle's appellate record that suggests his mental health concerns are ongoing and he is likely to be subject to a WIS. STAT. ch. 51 commitment with a medication order again in the future.[8] *See* ***L.X.D.-O.***, 407 Wis. 2d 441, ¶18. Thus, we conclude that the same legal issue will likely arise again for Kyle. Further, "given the short duration of commitment orders and the corresponding medication orders—six months for initial commitments and one year for recommitments … the issue presented by this appeal is likely to evade review because appellate review may not be accomplished before a commitment order expires."[9] ***Id.***

¶14 We now turn to the merits of Kyle's appeal. Kyle first argues that the County failed to prove that Dr. Bales provided Kyle with the necessary

---

[8] Doctor Bales' reports describe Kyle as having been "aggressive repeatedly and combative at times," state that Kyle's "assaultiveness is believed to be related to his manic and psychotic state," describe multiple police contacts and an incident where Kyle was "homicidal toward a neighbor," state that "many" of these problems are the same as the ones he was suffering as of the date of the examination, and state that the County "has had concerns about him for some time." Further, Bales testified that Kyle "will not take medication voluntarily" and that Kyle "constitutes a substantial risk of physical harm to himself or to others" without more treatment.

[9] Kyle also argues that we should decide his case on its merits because he presents an issue that is likely to arise again and should be resolved by this court to avoid uncertainty— another exception to the mootness doctrine enumerated in ***Portage County v. J.W.K.***, 2019 WI 54, ¶12, 386 Wis. 2d 672, 927 N.W.2d 509. Kyle argues that his case presents a scenario where an individual exercises his or her right to remain silent when being examined by a court-appointed psychiatrist. As will be explained below, Kyle did not merely remain silent, but he also exhibited threatening behavior and walked away from the examination. The issue of an individual causing his or her medication review to end by exhibiting threatening behavior has already been addressed by this court in ***Outagamie County v. L.X.D.-O.***, 2023 WI App 17, 407 Wis. 2d 441, 991 N.W.2d 518, *review denied* (WI May 24, 2023) (No. 2020AP1806). Accordingly, we reject this argument.

explanation of the advantages, disadvantages, and alternatives to medication. Kyle notes that the provision of this information is required under WIS. STAT. § 51.61(1)(g)4. as a condition precedent to the circuit court determining that he is incompetent to refuse medication or treatment.

¶15    Whether a county provided sufficient evidence to prove that a person is not competent to refuse medication or treatment under WIS. STAT. § 51.61(1)(g) presents a mixed question of fact and law. *Outagamie County v. Melanie L.*, 2013 WI 67, ¶¶37-39, 349 Wis. 2d 148, 833 N.W.2d 607. We uphold the circuit court's findings of fact unless they are clearly erroneous. *Id.*, ¶38. Whether those facts meet the statutory requirements is a question of law that we review de novo. *Id.*, ¶39. "[A] finding of fact is clearly erroneous when 'it is against the great weight and clear preponderance of the evidence.'" *Phelps v. Physicians Ins. Co. of Wis.*, 2009 WI 74, ¶39, 319 Wis. 2d 1, 768 N.W.2d 615 (citation omitted).

¶16    WISCONSIN STAT. § 51.61(1)(g) provides that patients at a treatment facility have the "following rights, under the following procedures, to refuse medication and treatment":

> 3. Following a final commitment order … have the right to exercise informed consent with regard to all medication and treatment unless the committing court … makes a determination, following a hearing, that the individual is not competent to refuse medication or treatment ….
>
>  ….
>
> 4. For purposes of a determination under subd. … 3., an individual is not competent to refuse medication or treatment if, because of mental illness, … and *after the advantages and disadvantages of and alternatives to accepting the particular medication or treatment have been explained to the individual*, one of the following is true:

a. The individual is incapable of expressing an understanding of the advantages and disadvantages of accepting medication or treatment and the alternatives.

b. The individual is substantially incapable of applying an understanding of the advantages, disadvantages and alternatives to his or her mental illness, … in order to make an informed choice as to whether to accept or refuse medication or treatment.

(Emphasis added.)

¶17    In determining whether an individual is incompetent to refuse medication, "the circuit court must first be satisfied that the advantages and disadvantages of, and the alternatives to, medication have been adequately explained to the patient." *Virgil D. v. Rock County*, 189 Wis. 2d 1, 14, 524 N.W.2d 894 (1994). The explanation of the proposed medication "should include why a particular drug is being prescribed, what the advantages of the drug are expected to be, what side effects may be anticipated or are possible, and whether there are reasonable alternatives to the prescribed medication." *Melanie L.*, 349 Wis. 2d 148, ¶67.

¶18    Here, we conclude that absent consideration of Dr. Bales' reports and Kyle's behavior, Bales' testimony *alone* was insufficient to establish that Kyle was given an adequate explanation of his medication. Bales testified that his examination of Kyle was abbreviated, lasting only approximately five minutes. Bales stated that he started the examination with the medication review, explaining its benefits, side effects, and alternatives "in as much detail as [he] could" before Kyle responded with profanities, an obscene gesture, and walked away. However, Bales did not testify as to how much of the required medication explanation he was able to complete before Kyle walked away, and he was unclear as to how many of the benefits and side effects of the medication he was able to explain to

9

Kyle. Further, regarding the alternatives to medication, Bales testified that he only told Kyle that there were "no good alternatives."

¶19 Doctor Bales' testimony alone "provides neither the circuit court nor this court with any basis to determine whether" Kyle "received 'a reasonable explanation of the proposed medication'" as required under WIS. STAT. § 51.61(1)(g)4. *See L.X.D.-O.*, 407 Wis. 2d 441, ¶26 (citation omitted). While Bales was not required to "recite magic words," his testimony alone was unclear and did not provide the circuit court with enough information to conclude that Kyle was given an adequate explanation of his proposed medication and treatment. *See id.*, ¶28.

¶20 Nevertheless, in light of Kyle's aggression and his ending the examination early, we further conclude that Dr. Bales' reports together with his testimony provide sufficient evidence to meet the requirements under WIS. STAT. § 51.61(1)(g)4. *See L.X.D.-O.*, 407 Wis. 2d 441, ¶38. Bales' reports list the specific advantages and disadvantages of Kyle's medication and explain that there are alternatives to medication, including psychotherapy and stress management tactics. This is information Bales attempted to provide to Kyle. However, he was prevented from doing so due to Kyle's aggressive and threatening behavior, and his leaving the examination before Bales could complete the explanation and examination.

¶21 Further, the reports state that Kyle was incapable of expressing an understanding of the advantages, disadvantages, and alternatives to medication and that he was substantially incapable of applying it to his own condition. The reports explain that Kyle is not competent to refuse medication due to him being "unable to weigh the pros and cons of psychotropics or apply the information to

himself. He was defiant and blamed others. He has a long history of medication noncompliance."[10] Thus, there was sufficient evidence for the circuit court to find that Kyle was incapable of expressing an understanding of the advantages, disadvantages, and alternatives to his medication.

¶22 Kyle argues that Dr. Bales failed to fulfill his duty to provide Kyle the required medication explanation. In support of this argument, Kyle cites to

---

[10] Kyle addresses the argument that Dr. Bales' reports provided sufficient evidence to support the involuntary medication order by noting that, unlike the circuit court in *L.X.D.-O.*, the circuit court here never made an explicit statement that it was relying on Bales' reports. We reject this argument. Bales' reports were admitted into evidence, and the court stated that its conclusion on the sufficiency of the evidence was "[b]ased on the evidence that's been presented." Regardless, our review of the sufficiency of the evidence is de novo, and our record includes Bales' reports. *See Outagamie County v. Melanie L.*, 2013 WI 67, ¶39, 349 Wis. 2d 148, 833 N.W.2d 607.

Kyle also attacks Dr. Bales' reports by claiming that Bales' reports were contradicted by Bales' testimony. Kyle alleges that Bales' reports state that the examination ended after Kyle "walked off." Kyle then notes that Bales testified that the examination was abbreviated due to Bales' concern for his own safety. Kyle argues that these differing reasons for ending the examination conflict with each other. We disagree for several reasons. First, Bales' reports do not state that Bales ended the examination due to Kyle having "walked off." In fact, the reports do not even contain the words "walked off." Rather, directly after testifying that he ended the examination due to concerns for his own safety, Bales stated that after he talked about medications, Kyle responded "with obscenities and an obscene gesture, and then he walked off." These statements do not contradict each other, as Bales could have attempted to continue the examination by calling Kyle back or walking with him. However, Bales presumably declined to do so because he was concerned for his own safety. Kyle had the opportunity to—but did not— impeach Bales on this alleged contradiction during the hearing. Kyle appears to raise this alleged contradiction on appeal as an attempt to attack Bales' credibility. However, we note that the circuit court "is the sole arbiter of credibility issues," and the facts in this record support the court's conclusions. *See State v. Sloan*, 2007 WI App 146, ¶21, 303 Wis. 2d 438, 736 N.W.2d 189.

Similarly, Kyle argues that it is significant that Dr. Bales was the psychiatrist in *L.X.D.-O.* and that his report in *L.X.D.-O.* is similar to the reports he submitted in this case. We consider this fact irrelevant, as it has no bearing on whether Bales' reports sufficiently show that Kyle was given an adequate explanation of his medication or whether there is sufficient evidence that Kyle is incompetent to refuse medication. Any similarities between the report in *L.X.D.-O.* and the reports in the present case do not mean that Bales' reports here are inaccurate or unreliable. Again, we reject this attempt to attack Bales' credibility. *See Sloan*, 303 Wis. 2d 438, ¶21.

*A.M.N.*—a case where this court reversed a WIS. STAT. ch. 51 involuntary medication order due to there being "no admissible evidence provided at the final hearing as to the nature and extent of any attempt to provide [the individual] with the required explanation." *See A.M.N.*, No. 2022AP1395, ¶34.

¶23 We reject this argument. We first note that the facts presented by Kyle are materially distinguishable from those in *A.M.N.* In that case, the patient elected to remain silent during his WIS. STAT. ch. 51 examination. *A.M.N.*, No. 2022AP1395, ¶6. As a result, the examining doctor based his findings on "collateral information" and testified that a nurse practitioner "'tried at least twice' to explain the advantages, disadvantages, and alternatives of the medications." *Id.*, ¶10. We reversed on the ground that the circuit court was not provided any details regarding the reasoning for the conclusion that the individual was unable to apply an understanding of the advantages, disadvantages, and alternatives to the medication. *Id.*, ¶32. The doctor did not provide any details regarding these attempts and the content of the conversations, nor did the nurse practitioner testify at the final hearing. *Id.*, ¶¶32-33.

¶24 Here, the circuit court heard direct testimony on the medication explanation that was given to Kyle, and received reports evidencing the additional explanation that would have been provided had he not reacted aggressively and left the medication review. Kyle's actions went far beyond electing to remain silent. While Dr. Bales was attempting to perform the medication review, Kyle responded with profanities and an obscene gesture, causing Bales to be concerned about his own safety, and then Kyle walked away. Had Kyle merely remained silent, Bales would have been able to fully explain to him the advantages, disadvantages, and alternatives to medication. We therefore do not find the court's reasoning in *A.M.N.* persuasive in this case.

¶25    Instead, Kyle's behavior is similar to the patient's behavior in *L.X.D.-O.*    There, the patient was "oppositional and angry during the entire interview" and then walked out of the room during the medication review. *L.X.D.-O.*, 407 Wis. 2d 441, ¶39.    The patient then appealed his involuntary medication order, arguing that the County failed to prove that he was not competent to refuse medication. *Id.*, ¶20.  We rejected this argument, holding that the patient

> refused to engage with [the doctor] to receive the full, required explanations.   [He] cannot now assert that his efforts to avoid the medication discussion should defeat the medication order…. [I]f we were to agree with [the patient] in this circumstance, "it would be devastating to a county's ability to treat patients in [WIS. STAT. ch.] 51 commitments and would produce an absurd result.  Patients could avoid the discussion, and consequently a medication order, simply by walking away from the conversation."

*L.X.D.-O.*, 407 Wis. 2d 441, ¶40 (citation omitted).  Here, Kyle refused to engage with Dr. Bales and walked away during the medication review.  He cannot now assert that his efforts to avoid the medication discussion should defeat the medication order. *See id.*  As in *L.X.D.-O.*, if we were to agree with Kyle, "it would be devastating to a county's ability to treat patients in Chapter 51 commitments and would produce an absurd result.  Patients could avoid the discussion, and consequently a medication order, simply by walking away from the conversation." *See L.X.D.-O.*, 407 Wis. 2d 441, ¶40.

¶26    Kyle next argues that the evidence is insufficient to support the circuit court's finding that he is incompetent to refuse unwanted medication because he is incapable of expressing an understanding of the advantages and disadvantages of accepting medication or treatment and the alternatives, and that Dr. Bales merely "checked the relevant box in his report[s]."  A county bears the

13

burden of proving, by clear and convincing evidence, that a patient is incompetent to refuse medication. *Melanie L.*, 349 Wis. 2d 148, ¶37.

¶27    Our supreme court set forth the following five factors to consider in determining whether a person is competent to refuse medication:

> (a) Whether the patient is able to identify the type of recommended medication or treatment;
>
> (b) whether the patient has previously received the type of medication or treatment at issue;
>
> (c) if the patient has received similar treatment in the past, whether he or she can describe what happened as a result and how the effects were beneficial or harmful;
>
> (d) if the patient has not been similarly treated in the past, whether he or she can identify the risks and benefits associated with the recommended medication or treatment; and
>
> (e) whether the patient holds any patently false beliefs about the recommended medication or treatment which would prevent an understanding of legitimate risks and benefits.

*Virgil D.*, 189 Wis. 2d at 14-15.

¶28    Neither Dr. Bales nor Dr. Black testified that Kyle was able to identify the psychotropic medication he was prescribed. Bales testified that— during his examination of Kyle—he mentioned the specific medication that Kyle was prescribed, Abilify, and that Kyle only responded with an obscene gesture. Kyle has received psychotropic medication in the past; however, Bales' reports state that Kyle was unable to weigh the pros and cons of psychotropic medications and, during the medication examination, Kyle did not provide any statements indicating that he was able to describe what happened as a result of taking the

medication.[11]  Grier testified that Kyle had previously refused his psychotropic medication, but he was unaware of why Kyle had done so.  He stated that Kyle "wanted his papers because he was supposed … to see a doctor for a new prescription, and he ripped the papers up, he just didn't want to…. [W]e don't know why."  Bales testified that "on 2/5/23, [Kyle] refused his medication, all of it, medical and mental health.  He said simply, I do not take medication, end quote, and that's his pattern."

¶29  Apart from arguing that he merely remained silent during Dr. Bales' medication review, which we conclude is not supported by the record, Kyle largely fails to contend with—or even address—the evidence presented regarding his incompetence to refuse medication.  Thus, in consideration of all of the *Virgil D.* factors, we conclude that the County presented clear and convincing evidence that Kyle is incapable of expressing an understanding of the advantages and disadvantages of accepting medication and treatment or their alternatives, and he is therefore incompetent to refuse medication.  Accordingly, we affirm the circuit court's order for Kyle's involuntary medication and treatment.

*By the Court.*—Order affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)4.

---

[11] Doctor Black testified that he did not have the records of what psychotropic medication Kyle had been previously prescribed, but that he believed Kyle had previously been prescribed Abilify.  Regardless of the specific medication, Kyle has been previously prescribed the same type of medication.