**COURT OF APPEALS
DECISION
DATED AND FILED**

**May 7, 2024**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP206**

Cir. Ct. No. **2016ME946**

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT III**

IN THE MATTER OF THE MENTAL COMMITMENT OF **R. J. M.:**

**BROWN COUNTY,**

   **PETITIONER-RESPONDENT,**

 **V.**

**R. J. M.,**

   **RESPONDENT-APPELLANT.**

APPEAL from orders of the circuit court for Brown County: TIMOTHY A. HINKFUSS, Judge. *Affirmed*.

¶1 HRUZ, J.[1] Richard[2] appeals orders for his recommitment and for his involuntary medication, entered pursuant to WIS. STAT. §§ 51.20 and 51.61(1)(g)3., respectively. He argues that there was insufficient evidence to support a determination that he is a proper subject for treatment and that he is dangerous. Richard additionally argues that the circuit court failed to make specific factual findings regarding his dangerousness, as required by *Langlade County v. D.J.W.*, 2020 WI 41, 391 Wis. 2d 231, 942 N.W.2d 277, and that Brown County did not meet its burden to prove he received statutorily required information to support the court's issuance of an involuntary medication order.

¶2 We conclude that the County presented clear and convincing evidence that Richard is a proper subject for treatment and is dangerous under the applicable statutes. We also conclude that the circuit court made sufficient factual findings to satisfy *D.J.W.* and that the County met its burden for the involuntary medication order. Accordingly, we affirm.

## BACKGROUND

¶3 Richard was emergently detained in 2016 after he stopped taking his medication, began drinking alcohol and smoking marijuana, destroyed property at his family's business, threatened and assaulted his brother, and threatened to kill his sister and her dogs. Following a hearing, Richard was involuntarily committed for a period of six months, pursuant to WIS. STAT. § 51.20. Since then, Richard has

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] For ease of reading, we refer to the appellant in this confidential matter using a pseudonym, rather than his initials.

been recommitted seven times for periods of twelve months each, the last of which is the subject of this appeal.

¶4      In March 2023, the County timely petitioned to extend Richard's commitment.  The circuit court held a hearing on the petition in May 2023, during which the County presented testimony from two witnesses: psychiatrist Marshall Bales and case manager Trenton Estano.  Bales testified that Richard suffers from bipolar disorder and from substance abuse problems.  Bales stated that Richard's condition is treatable and that he discussed with Richard the advantages and disadvantages of, and alternatives to, medication for Richard's condition.  Bales testified that Richard responded that he believed he did not experience any benefits from his medication, and that Richard embellished the side effects that he suffers from using the medication.

¶5      Doctor Bales stated that Richard is incompetent to refuse medication[3] and that Richard would be a proper subject for commitment if treatment were withdrawn.  Specifically, Bales testified, "[w]hat happened in 2016 will happen again," and Bales noted that Richard has a pattern of being given the opportunity to take his medication on a voluntary basis, not taking his medication, and once again becoming dangerous and threatening others.  According to Bales, Richard "made it very clear" that he will stop taking medication and stop all mental health care if his medication and treatment are voluntary.  Bales also noted that Richard had threatened his doctors and repeatedly threatened to kill himself.

---

[3] Doctor Bales did not testify as to why, specifically, Richard is incompetent to refuse medication.  However, as will be discussed shortly, Bales' report was admitted into evidence at the hearing and provides Bales' reasons in support of that conclusion.

¶6    Doctor Bales' report was offered into evidence without objection, and Bales was subject to cross-examination regarding its contents. The report noted that in April 2023, Richard stopped taking his medication and started "making inappropriate calls excessively." Specifically, Richard made "dozens of calls and left messages," some of which "contained suicidal and homicidal statements." The report also noted an incident in which Richard "punched a window and broke his wrist," which, according to Richard, was done "so he would not kill" one of his psychiatrists. Further, the report states that Richard continues to drink alcohol even though it worsens the symptoms of his bipolar disorder. The report did indicate that Richard had slightly improved in 2023 but also stated that he still had intermittent periods of dangerousness.

¶7    Regarding Richard's competency to refuse medication, Dr. Bales' report stated that Bales explained to Richard the advantages and disadvantages of, and alternatives to, medication that would help treat Richard. The report also listed each of the advantages, disadvantages, and alternatives to such medication. However, the report stated that Richard is "substantially incapable of applying an understanding" of his medication to his condition "in order to make an informed choice as to whether to accept or refuse the recommended medication or treatment." This incapability is because Richard was unable to list the benefits of his medication, "cited many side effects, including many not usually encountered," and "could not weigh the pros and cons" of his medication.

¶8    Estano testified that Richard had experienced "some periods with homicidal and suicidal ideation" during the prior year. Estano specifically testified that he conducted a home visit with Richard during March 2023 and that Richard "appeared to be escalated" when Estano arrived. During their discussion, Richard voluntarily disclosed to Estano that "every day he thinks about cutting" Estano's

4

throat. Richard testified that his medications cause him health issues, but he intends to take his medication.

¶9    The circuit court found that Richard is mentally ill, suffers from bipolar disorder and substance abuse disorder, and that he is a proper subject for treatment. Referring to WIS. STAT. § 51.20(1)(a)2.c.,[4] the court found that Richard is dangerous because he evidenced a "substantial probability of physical impairment or injury to himself … or other individuals," as manifested by "a pattern of recent acts or omissions" and a "substantial likelihood that [Richard] would become a proper subject for treatment under this standard if treatment were withdrawn." The court later stated, "I would also add the dangerousness requirement about [Estano, who] testified about [Richard] slitting [Estano's] throat…. [I]t's not a good thing to say. So that's part of the dangerousness requirement as well." The court further found that Richard is not competent to refuse medication or treatment because he is "substantially incapable of applying an understanding" of his medication to his condition "in order to make an informed choice as to whether to accept or refuse" medication.

¶10    The circuit court entered orders extending Richard's commitment for twelve months and for his involuntary medication or treatment. Richard now appeals. Additional facts will be provided below as necessary.

**DISCUSSION**

---

[4] The circuit court also found that Richard is dangerous under WIS. STAT. § 51.20(1)(a)2.a. Richard contests this finding as well. However, because we conclude that there was sufficient evidence to support the court's finding of dangerousness under § 51.20(1)(a)2.c. and that the court made sufficient findings with respect to that subdivision paragraph under *Langlade County v. D.J.W.*, 2020 WI 41, 391 Wis. 2d 231, 942 N.W.2d 277, we need not address Richard's arguments regarding § 51.20(1)(a)2.a. *See Turner v. Taylor*, 2003 WI App 256, ¶1 n.1, 268 Wis. 2d 628, 673 N.W.2d 716 (this court need not address all issues raised by the parties if one is dispositive).

¶11    Richard argues that the County failed to provide sufficient evidence showing that he is a proper subject for treatment.  In particular, he contends that the County only presented evidence that bipolar disorders, in general, are treatable and not that Richard specifically is treatable.  Richard also contends that the County failed to provide sufficient evidence showing that he is dangerous and, relatedly, that the circuit court failed to make the specific dangerousness findings required by *D.J.W.*[5]  Finally, Richard argues that the County presented insufficient evidence to support the involuntary medication order.  We reject all of Richard's arguments.

¶12    Whether the County met its burden of proof to support orders extending Richard's commitment pursuant to WIS. STAT. § 51.20 and involuntary medication pursuant to WIS. STAT. § 51.61(1)(g) are mixed questions of law and fact.  *See D.J.W.*, 391 Wis. 2d 231, ¶¶24-25; *Outagamie County v. Melanie L.*, 2013 WI 67, ¶¶37-39, 349 Wis. 2d 148, 833 N.W.2d 607.  "[W]e will uphold a circuit court's findings of fact unless they are clearly erroneous.  A finding of fact is clearly erroneous if it is against the great weight and clear preponderance of the evidence."  *D.J.W.*, 391 Wis. 2d 231, ¶24.  "Whether the facts satisfy the statutory standard is a question of law that we review de novo."  *Waukesha County v. J.W.J.*, 2017 WI 57, ¶15, 375 Wis. 2d 542, 895 N.W.2d 783.

¶13    "In order to involuntarily commit a person pursuant to [WIS. STAT.] ch. 51, the petitioner must demonstrate that three elements are fulfilled:  the subject must be (1) mentally ill; (2) a proper subject for treatment; and (3) dangerous to themselves or others."  *Sheboygan County v. M.W.*, 2022 WI 40, ¶17, 402 Wis. 2d

---

[5] Richard does not contest that he is mentally ill.

1, 974 N.W.2d 733. These same three elements are necessary for a petitioner to prevail in a recommitment proceeding, such as the one in this case. *Id.*, ¶18.

¶14 A person has rehabilitative potential—and thus is a proper subject for treatment—if treatment will "'go beyond controlling … activity' and will 'go to controlling [the] disorder and its symptoms.'" *Fond du Lac County v. Helen E.F.*, 2012 WI 50, ¶36, 340 Wis. 2d 500, 814 N.W.2d 179 (alterations in original; citation omitted). WISCONSIN STAT. § 51.20(1)(a)2.a.-e. lists five standards under which a petitioner can prove an individual is currently dangerous. The third standard, at issue here, is met if an individual "[e]vidences such impaired judgment, manifested by evidence of a pattern of recent acts or omissions, that there is a substantial probability of physical impairment or injury to himself or herself or other individuals." Sec. 51.20(1)(a)2.c.

¶15 Here, the County presented sufficient evidence that Richard is a proper subject for treatment and is dangerous. Richard is correct in that Dr. Bales' testimony was, at times, somewhat vague and generalized, particularly regarding Richard's treatability. However, Bales' report was also entered into evidence before the circuit court. *See supra* ¶6. Bales' report described Richard as having a pattern of being mentally ill, being forced to take his medication, improving and subsequently no longer being forced to take his medication, and consequently reverting to a state in which he becomes dangerous. Further, Bales' report noted that Richard had improved in 2023.

¶16 These facts indicate that Richard's disorder and his symptoms are controllable with medication or treatment and that Richard's symptoms worsen when he stops taking his medication. The record is clear that Richard chooses to frequently undermine the efficacy of his treatment in several ways, including

drinking alcohol and not taking his medication. But, that fact does nothing to disprove the County's evidence that with the proper treatment, Richard's condition will improve. Indeed, as the County aptly states in its brief, "[j]ust because treatment has not been successful due to deliberate actions of [Richard] to sabotage that treatment, does not mean [that Richard's condition] is any less treatable."

¶17 Similarly, Dr. Bales' testimony regarding Richard's dangerousness was also somewhat vague and generalized. However, Bales' report documented multiple incidents indicating dangerousness, and other parts of the record also reflect evidence of recent dangerousness in the form of Richard's persistent threats to himself and others. For example, Richard made "dozens" of calls and left messages containing "suicidal and homicidal statements" just one month prior to his recommitment hearing; Richard felt the need to break his own wrist to prevent himself from killing a psychiatrist; and Richard would stop taking his medication and drink alcohol, thereby undermining his otherwise effective treatment. *See supra* ¶6. Further, and notably, Estano testified that Richard voluntarily told Estano that he thought about "cutting" Estano's throat *every day*.

¶18 On appeal, Richard does not address the incidents of dangerousness described in Dr. Bales' report. He does, however, contend that his statement about wanting to cut Estano's throat every day does not mean that he is dangerous. In support of this argument, Richard cites *Portage County v. E.R.R.*, No. 2020AP870-FT, unpublished slip op. ¶¶18-19 (WI App Oct. 1, 2020),[6] for the notion that the petitioner's statement in that case that he wanted to "snap people's necks" was not enough to establish dangerousness under WIS. STAT. § 51.20(1)(a)2.b. Given the

---

[6] Unpublished opinions authored by a single judge and issued on or after July 1, 2009, may be cited for their persuasive value. *See* WIS. STAT. RULE 809.23(3)(b).

8

record in this case, we disagree with Richard's contentions, including the alleged aptness of *E.R.R.*

¶19    We first note that we have no duty to distinguish or otherwise discuss *E.R.R.*  *See* WIS. STAT. RULE 809.23(3)(b).  In any event, we do not find that case persuasive.  In *E.R.R.*, this court did not categorically conclude that a statement of wanting to "snap people's necks" was insufficient to establish dangerousness.  Rather, in contemplation of our supreme court's directive in *D.J.W.*, this court declined to find the petitioner dangerous under WIS. STAT. § 51.20(1)(a)2.b. when the circuit court itself did not find the petitioner dangerous under that standard and did not make any factual findings regarding the petitioner's statement.[7]  *See E.R.R.*, No. 2020AP870-FT, ¶17.

¶20    Perhaps more importantly, the facts of this appeal are materially distinguishable from those in *E.R.R.*  Unlike in *E.R.R.*, the circuit court here clearly found credible the testimony that Richard wanted to cut Estano's throat.  Further, Richard's statement was directed toward a specific person with whom he regularly met—indeed, his case worker—and Richard stated that he thought about cutting Estano's throat "every day."  Finally, Richard's threats to kill somebody were not an isolated incident.  Rather, Richard's commitment in 2016 began when he threatened to "rip his [brother's] head off" and kill his sister and her dogs.  Additionally, evidence was introduced at the recommitment hearing that Richard more recently made "dozens" of phone calls with homicidal and suicidal statements.

---

[7] This court did also note in *Portage County v. E.R.R.*, No. 2020AP870-FT, unpublished slip op. ¶¶19, 21 (WI App Oct. 1, 2020), that there was a lack of evidence indicating that the petitioner would act on his desire to "snap people's necks."  However, this court's primary concern appears to have been a violation of *D.J.W.*  *See E.R.R.*, No. 2020AP870-FT, ¶¶17, 21. Regardless, as we will explain momentarily, Richard's statement differs from E.R.R.'s statement in several material ways.

The specificity of the person and the manner of killing conveyed by Richard's statement to Estano—along with the frequency *and continuing nature* of Richard's homicidal threats—is enough to support a finding of dangerousness. *See generally R.J. v. Winnebago County*, 146 Wis. 2d 516, 523, 431 N.W.2d 708 (Ct. App. 1988) (concluding that the petitioner's statement that she wanted to stab or kill her coworker was sufficient to establish dangerousness).

¶21    Richard next argues that the circuit court failed to make specific factual findings regarding his dangerousness, as required by our supreme court in *D.J.W.* Although this is a close case in this regard and the court's specific factual findings are scarce, we conclude that its findings are sufficient to satisfy the *D.J.W.* mandate.

¶22    In *D.J.W.*, the appellant was initially committed without a finding regarding the specific standard of dangerousness that he met. *D.J.W.*, 391 Wis. 2d 231, ¶36. On appeal from the original commitment order, this court concluded that D.J.W. was dangerous under WIS. STAT. § 51.20(1)(a)2.d. *D.J.W.*, 391 Wis. 2d 231, ¶37. When he appealed his recommitment, D.J.W. focused his briefing on dangerousness under § 51.20(1)(a)2.d., and the County did not specify any standard of dangerousness. *D.J.W.*, 391 Wis. 2d 231, ¶38. When our supreme court heard oral argument in the case, the County argued, for the first time, that D.J.W. was dangerous under § 51.20(1)(a)2.c. *D.J.W.*, 391 Wis. 2d 231, ¶39.

¶23    Our supreme court noted that the confusion as to which standard of dangerousness applied resulted in an unhelpful record and "conflicting messages" from the County and the court of appeals. *Id.*, ¶40. To prevent this issue in the future, our supreme court concluded that, in recommitment proceedings, a circuit court is required to "make specific factual findings with reference to the subdivision

10

paragraph of [WIS. STAT.] § 51.20(1)(a)2. on which the recommitment is based." ***D.J.W.***, 391 Wis. 2d 231, ¶40. The purpose of this mandate is to provide "clarity and extra protection to patients regarding the underlying basis for a recommitment," due to the important liberty interest at stake. ***Id.***, ¶42. Further, this mandate ensures clarity of the issues raised on appeal and ensures the "soundness of judicial decision making." ***Id.***, ¶44.

¶24 Here, while the circuit court's decision could have been more robust, the concerns underlying our supreme court's decision in ***D.J.W.*** are not present. Unlike in ***D.J.W.***, the court identified the standard under which Richard is dangerous—specifically, WIS. STAT. § 51.20(1)(a)2.c. The County has been consistent in arguing that Richard is dangerous under this standard. In turn, Richard was able to directly address the sufficiency of the evidence regarding his dangerousness, the result of which has been a circuit court record with a unified understanding of the standard of dangerousness at issue.

¶25 Further, the circuit court identified the specific actions for which it found Richard dangerous. In particular, the court stated, "I would also add the dangerousness requirement about [Estano, who] testified about [Richard] slitting [Estano's] throat…. [I]t's not a good thing to say. So that's part of the dangerousness requirement as well." While the court could have—and should have—provided more factual findings supporting its finding of dangerousness, this finding was sufficient to satisfy the ***D.J.W.*** mandate. *See generally **Winnebago County v. B.R.C.***, No. 2023AP1842, unpublished slip op. ¶¶9, 21 (WI App Feb. 14, 2024) (concluding that the circuit court's statement that it was "[r]elying heavily upon the opinion of the medical professional"—in combination with the detailed evidence from the medical professional and other witnesses—was sufficient to satisfy ***D.J.W.*** and ensure meaningful review).

11

¶26    Finally, Richard argues that the County presented insufficient evidence to support the involuntary medication order.  Richard contends that the County failed to prove that it gave him an adequate explanation of the advantages, disadvantages, and alternatives to his medication or treatment.  Richard also asserts that the County failed to adequately explain how he is incompetent to refuse medication.

¶27    In determining whether an individual is incompetent to refuse medication, "the circuit court must first be satisfied that the advantages and disadvantages of, and the alternatives to, medication have been adequately explained to the patient." *Virgil D. v. Rock County*, 189 Wis. 2d 1, 14, 524 N.W.2d 894 (1994).  The explanation of the proposed medication "should include why a particular drug is being prescribed, what the advantages of the drug are expected to be, what side effects may be anticipated or are possible, and whether there are reasonable alternatives to the prescribed medication." *Melanie L.*, 349 Wis. 2d 148, ¶67.  As relevant to this appeal,[8] WIS. STAT. § 51.61(1)(g)4.b. provides that a person may be found incompetent to refuse medication if he or she is "substantially incapable of applying an understanding of the advantages, disadvantages and alternatives to his or her mental illness, developmental disability, alcoholism or drug dependence in order to make an informed choice as to whether to accept or refuse medication or treatment."

---

[8] WISCONSIN STAT. § 51.61(1)(g)4. provides two ways in which a person may be found incompetent to refuse medication. *Outagamie County v. Melanie L.*, 2013 WI 67, ¶54, 349 Wis. 2d 148, 833 N.W.2d 607.  Doctor Bales opined that Richard is incompetent under both of those standards, and Richard contests the sufficiency of the evidence for both standards.  However, the circuit court found that Richard was incompetent to refuse medication under only one of the standards—namely, that Richard is substantially incapable of applying an understanding of his medication to his condition. *See* § 51.61(1)(g)4.b.  Because we conclude that there was sufficient evidence to support the court's finding under that standard, we need not address Richard's arguments regarding the other standard in § 51.61(1)(g)4. *See Turner*, 268 Wis. 2d 628, ¶1 n.1.

¶28 Regarding the sufficiency of the medication explanation, Richard argues that Dr. Bales' testimony was vague, did not specify the advantages, disadvantages, or alternatives to medication, and did not indicate how many times people have tried to explain Richard's medication to him. We agree with Richard that Bales' testimony was, at times, vague and that Bales should have testified in more detail in this regard. However, Bales' report—which, again, was admitted into evidence—provides the details necessary to prove that Richard was given an adequate explanation of his medication. The report states that Bales explained to Richard the advantages, disadvantages, and alternatives to his medication. The report also provides the specific advantages, disadvantages, and alternatives to Richard's medication and, importantly, states that these specifics were explained to Richard. Richard is correct that there is no information as to how many times people tried to explain his medication to him. However, the County is not required to provide such evidence. *See generally* WIS. STAT. § 51.61(1)(g); *Melanie L.*, 349 Wis. 2d 148, ¶¶53-54.

¶29 Similarly, Richard argues that Dr. Bales' testimony was vague as to why Richard is incompetent to refuse medication. Again, we agree that Bales' testimony in this regard was vague and did not rise to the level of clear and convincing evidence of Richard's incompetence. Indeed, we find it concerning that Bales' testimony was so ambiguous and that the County did not further flesh out the details of Bales' opinion during his direct examination.

¶30 Nevertheless, and once again, Dr. Bales' report provides the details necessary to support the circuit court's findings regarding Richard's incompetence to refuse medication. The report states that Richard is incompetent to refuse medication because, during the medication review, Richard could not list any of the benefits of his medication, "was unreasonable" in his comments about the

medication, and could not "weigh the pros and cons of psychotropic [medication] or apply the information to himself." Accordingly, we affirm the circuit court's recommitment order and order for Richard's involuntary medication and treatment.

*By the Court.*—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.